18b 425
16ap481

### SECOR *vs.* HARRIS.

These words spoken of a physician, in reference to his treatment of particular cases professionally—"Doctor S. killed my children. He gave them tea-spoonful doses of calomel, and it killed them: they did not live long after they took it. They died right off—the same day"—are actionable *per se*. SHANKLAND, J., dissented.

When a physician is charged with gross ignorance, and a total want of skill in his profession, in a single instance, the words are actionable of themselves.

The rule may be laid down as a general one that when a charge made against a physician as such, implies gross ignorance and unskillfulness in his profession, the words are actionable *per se*. This is upon the ground that the law presumes damage to result, from the very nature of the charge.

*Poe* v. *Mendford*, (*Cro. Eliz.* 620,) and *Foot* v. *Brown*, (8 *John.* 64,) disapproved, and declared not sound.

MOTION by the plaintiff for a new trial, upon a bill of exceptions.

*F. U. Fenno*, for the plaintiff.

*W. B. Hawes*, for the defendant.

MASON, J. This is an action for slander. Upon the trial of the cause the plaintiff proved the following words, which were also alleged in the complaint: "*Doctor Secor killed my children.*" "*He gave them tea-spoonful doses of calomel, and they died.*" "*Dr. Secor gave them tea-spoonful doses of calomel, and it killed them ; they did not live long after they took it. They died right off—the same day.*" The plaintiff was proved to be a practising physician, and the evidence shows that he had practised in the defendant's family, and had prescribed for the defendant's children, and that the words were spoken of him in his character of a physician. The plaintiff claimed that the words were actionable, and that he was entitled to have this branch of the case, upon the words, submitted to the jury. The judge at the circuit held that the words were not actionable, and took them from the consideration of the jury. These words, spoken of the plaintiff as a physician, are actionable *per se*,

whatever may be said upon the question, whether they impute a criminal offense.   They do not impute a criminal offense, unless there is evidence, arising from the quantity of the calomel which the defendant alleged that the plaintiff gave these children, from which a jury would be justified in finding an intention to kill them.   One of them was three years of age, and the other, one year and a half.   If the natural result, which should reasonably be expected from feeding children of such tender years full tea-spoon doses of calomel, would be certain death, then it is not a forced construction of the words to say that the defendant intended to charge the plaintiff with an intention to kill these children, in giving them such doses.   It is not necessary, however, to say that the judge should have submitted this case to the jury upon the question, whether the defendant did not intend to impute to the plaintiff, by these words, a criminal offense.   I am quite inclined to think, however, that had the judge submitted the case to the jury upon the imputation of a criminal intent in these words, and had the jury found that such intent was imputed, we should not be justified in setting aside their verdict. It is not necessary, however, to place the case upon this ground; for it is certainly slanderous to say of a physician that he killed these children of such tender years, by giving them tea-spoonful doses of calomel.   The charge, to say the least, imports such a total ignorance of his profession as to destroy all confidence in the physician.   It is a disgrace to a physician to have it believed that he is so ignorant of this most familiar and common medicine, as to give such quantities thereof to such young children. The law is well settled that words published of a physician, falsely imputing to him general ignorance or want of skill in his profession, are actionable, in themselves, on the ground of presumed damage.   (*Starkie on Slander,* 100, 110, 115, 10, 12. *Martyn* v. *Burlings, Cro Eliz.* 589.   *Bacon's Abr. title Slander,* (*B.*)   *Watson* v. *Van Derlash, Het.* 69.   *Tutler* v. *Alwin,* 11 *Mod. R.* 221.   *Smith* v. *Taylor,* 1 *New R.* 196.   *Sumner* v. *Utley,* 7 *Conn. R.* 257.)   I am aware that it was held, in the case of *Poe* v. *Mendford,* (*Cro. Eliz.* 620,) that it is not actionable to say of a physician, "*he hath killed a patient with*

*physic ;*" and that, upon the strength of the authority of that case, it was decided in this court in *Foot* v. *Brown,* (8 *John.* 64,) that it was not actionable to say of an attorney or counsellor, when speaking of a particular suit, " *he knows- nothing about the suit ; he will lead you on until he has undone you.*" These cases are not sound.   The case of *Poe* v. *Mendford* is repudiated in *Bacon's Abr.* as authority, and cases are referred to as holding a contrary doctrine, (9 *vol. pages* 49, 50.)   The cases of *Poe* v. *Mendford,* and of *Foot* v. *Brown,* were reviewed by the supreme court of Connecticut, in the case of *Sumner* v. *Utley,* (7 *Conn. R.* 257,) with most distinguished ability, and the doctrine of those cases repudiated.   In the latter case it is distinctly held, that words are actionable in themselves, which charge a physician with ignorance or want of skill in his treatment of a particular patient, if the charge be such as imports gross ignorance or unskillfulness.   To the same effect is the case of *Johnson* v. *Robertson,* (8 *Porter's R.* 486,) where it was held that the following words spoken of a physician in regard to his treatment of a particular case, " *He killed the child by giving it too much calomel,*" are actionable in themselves ; and such is the case of *Tutler* v. *Alwin,* (11 *Mod. R.* 221,) where it was held to be actionable to say of an apothecary, that " *he killed a patient with physic.*" (*See also* 3 *Wilson's R.* 186 ; *Bacon's Abr. tit. Slander, letter B* 2, *vol.* 9, *page* 49, *Bouv. ed.*)   The cases of *Poe* v. *Mendford,* and *Foote* v. *Brown,* have been repudiated by the highest judicial tribunal in two of the American states, while the case of *Poe* v. *Mendford* seems to have been repudiated in England ; and I agree with Clinch, justice, that the reason upon which that case is decided is not apparent.   I do not go the length to say that falsehood may not be spoken of a physician's practice, in a particular case, without subjecting the party to this action.   A physician may mistake the symptoms of a patient, or may misjudge as to the nature of his disease, and even as to the powers of medicine, and yet his error may be of that pardonable kind that will do him no essential prejudice, because it is rather a proof of human imperfection than of culpable ignorance or unskillfulness ; and where charges are made

against a physician that fall within this class of cases, they are not actionable, without proof of special damages. (7 *Conn. R.* 257.) It is equally true, that a single act of a physician may evince gross ignorance, and such a total want of skill, as will not fail to injure his reputation, and deprive him of general confidence. When such a charge is made against a physician, the words are actionable *per se.* (7 *Conn. R.* 257.) The rule may be laid down as a general one that, when the charge implies gross ignorance and unskillfulness in his profession, the words are actionable *per se.* This is upon the ground that the law presumes damage to result, from the very nature of the charge. The law in such a case lays aside its usual strictness ; for when the presumption of damage is violent, and the difficulty of proving it is considerable, the law supplies the defect, and, by converting presumption into proof, secures the character of the sufferer from the misery of delay, and enables him at once to face the calumny in open court. (*Starkie on Slander,* 581.) It was well said by the learned Ch. Justice Hosmer in *Sumner* v. *Utley,* (7 *Conn. R.* 257,) that, " as a general principle, it can never be admitted that the practice of a physician or surgeon in a particular case may be calumniated with impunity, unless special damage is shown. By confining the slander to particulars, a man may thus be ruined in detail. A calumniator might follow the track of the plaintiff, and begin by falsely ascribing to a physician the killing of three persons by mismanagement, and then, the mistaking of an artery for a vein, and thus might proceed to misrepresent every single case of his practice, until his reputation should be blasted beyond remedy. Instead of murdering character by one stroke, the victim would be cut successively in pieces, and the only difference would consist in the manner of effecting the same result." It is true, as was said by the learned Chief Justice Hosmer in that case, the redress proposed, on the proof of special damage, is inadequate to such a case. Much time may elapse before the fact of damage admits of any evidence ; and then the proof will always fall short of the mischief. In the mean time the reputation of the calumniated person languishes and dies ; and hence, as we have before said,

the presumption of damage being violent, and the difficulty of proving it considerable, the law supplies the defect by converting presumption of damage into proof, (*Starkie on .Slander,* 581;) in other words, the law presumes that damages result from the speaking of the words.   In the case under consideration, the words proved impute to the plaintiff such gross ignorance of his profession, if nothing more, as would be calculated to destroy his character wherever the charge should be credited.   It would be calculated to make all men speak out and say as did the witness Richard Morris, *" that it was outrageous, and the plaintiff ought not to be permitted to practice."*   The law will therefore presume damages to result from the speaking of the words, and consequently hold the words actionable in themselves.   The judge at the circuit erred in taking this branch of the case from the consideration of the jury, and a new trial must be granted; costs to abide the event of the action.


CRIPPEN, J., concurred.


SHANKLAND, J., dissented.

New trial granted.

[MADISON GENERAL TERM, September 12, 1854.   *Crippen, Shankland* and *Mason,* Justices.]