CARROLL *vs.* WHITE.

33b 615
16ap481
33b 615
57ad 9
33b 615
83 AD⁰211

Words charging a physician and surgeon with having "killed six children in one year," if spoken of him in his profession, and set forth in a complaint containing appropriate inducement, colloquium and innuendo, are actionable *per se ;* as they impute to the plaintiff ignorance, recklessness, and unskillfulness, if not criminality.

A complaint, to be good, in slander for words actionable only becase spoken of the plaintiff in his business or profession, must contain appropriate averments by way of inducement and colloquium.

If a physician brings an action for the speaking of words which are disgraceful to him in his profession, he must aver, in his complaint, that he was a practicing physician at the time when, &c. and that the words were spoken of and concerning him in his profession.

In an action for slander, the words spoken are to be taken in their natural meaning, and according to common acceptation.

Words charging a person with having "killed" several human beings, are actionable *per se ;* as they import a voluntary, felonious killing, according to their natural sense and meaning.

If the innuendo in such a case is that the defendant, by the speaking of the words, intended to charge the plaintiff with the crime of murder, this is sufficient, even though it should be held that the words amount only to a charge of manslaughter; *as they would still impute to the plaintiff the commission of an infamous crime punishable by law, and are therefore actionable.*

When the words laid, in a pleading, are actionable in themselves it is unnecessary to characterize the offense by an averment ; and if the offense be improperly characterized in the innuendo it will not vitiate the pleading

DEMURRER to the third count, or cause of action stated in the complaint. The complaint contains three counts in slander. By each of the first two counts the defendant is charged with slandering the plaintiff in his profession as a physician and surgeon, and each of them contains an inducement, colloquium and innuendoes appropriate to be stated in order to give meaning and point to the words alleged to have been uttered.

The third count is in the following words, to wit : "3d. For a further and other complaint and cause of action the plaintiff upon his information and belief says that afterwards, to wit, on or about the third day of January, 1858, at the town of Amsterdam, in the county of Montgomery aforesaid, in a

certain other discourse which the said defendant then and there had, in the presence and hearing of divers other good and worthy citizens of this state, he the said defendant, further contriving and intending to injure, defame, and slander the plaintiff, falsely and maliciously spoke and published, of and concerning the plaintiff, these other false, scandalous, malicious and defamatory words following, to wit: 'Doctor Carroll (plaintiff meaning) killed six children in one year.' 'Doctor Carroll (plaintiff meaning) killed six children.' 'Doctor Carroll (plaintiff meaning) has killed some, (meaning persons or children.') 'Doctor Carroll (plaintiff meaning) and the other physicians of the village (meaning the said village of Amsterdam) have killed seventy (persons meaning) in one year;' thereby charging the plaintiff with the crime of murder."

The demurrer is general, that the third count does not state facts sufficient to constitute a cause of action.

*A. H. Ayres,* for the plaintiff.

*D. P. Corey,* for the defendant.

BOCKES, J. The words charged were clearly actionable *per se,* if spoken of the plaintiff in his profession, as they would then clearly impute to him ignorance, recklessness or unskillfulness, if not criminality. In *Tutty* v. *Alewin,* (11 *Mod. Rep.* 283,) these words were spoken of an apothecary. " It is a world of blood he has to answer for in this town, through his ignorance he did kill a woman and two children at Southampton—he did kill John Prior at Petersfield—he was the death of John Prior—he has killed his patient with physic." They were held actionable. In *Watson* v. *Vanderlash,* (*Hetley's Rep.* 69,) these words were spoken of a surgeon, " He killed J. S."—held actionable. Also, " he poisoned the wound of his patient for gain or money," (1 *And. R.* 268,) held actionable. In *Secor* v. *Harris,* (18

Carroll *v.* White.

*Barb.* 425,) these words were spoken of a physician: "Doctor Secor killed my children. He gave them teaspoonful doses of calomel, and they died. Doctor Secor gave them teaspoonful doses of calomel and it killed them. They did not live long after they took it; they died right off, the same day." These words were held actionable. In *Edsall* v. *Russell*, (43 *Eng. Com. Law*, 560,) the words were, "he killed my child. It was the saline injection that did it." Held to be actionable, being spoken of a physician, and stated in a complaint containing appropriate inducement, colloquium and innuendo. So also, "he has killed the child by giving it too much calomel." (*Johnson* v. *Robertson*, 18 *Porter's R.* 468.) It is entirely plain that these and similar words, spoken of a physician, tend to degrade him in his profession; and hence are actionable *per se.* They denote the taking of the life of a human being feloniously; for if no willfulness or criminal intent be charged, still they carry an imputation of carelessness, recklessness or ignorance, for which the party might be convicted of manslaughter. But a complaint, to be good, in slander for words actionable only because spoken of the plaintiff in his business or profession, must contain appropriate averments by way of inducement and colloquium. If a physician bring an action for the speaking of words which are disgraceful to him in his profession, he must aver in his complaint, that he was a practicing physician at the time the words were uttered, and that they were spoken of and concerning him in his profession. The count to which the demurrer is interposed, in this case, contains no such averments, nor does it adopt any statements or averments by reference to the former counts, or to either of them. The demurrer is therefore well taken if the words are to be deemed actionable only for the reason that they were spoken of the plaintiff as a physician and in his profession.

But the plaintiff insists that the words charged impute to him the commission of a crime—of an indictable offense, in-

volving moral turpitude, without regard to his profession or to his character as a physician.

The words stated in the complaint are these: " Doctor Carroll killed six children in one year—Doctor Carroll killed six children—Doctor Carroll has killed some—Doctor Carroll and the other physicians of the village have killed seventy in one year." The substance of the charge conveyed by these words is, that the plaintiff had "killed" several human beings; and the question now presented is, whether the charge of killing a human being imports an unlawful and felonious taking of life. The argument by the defendant is that to kill does not necessarily signify to murder or to slay unlawfully, and that the words are consequently capable of an innocent construction. Concede this, and it does not follow that the words are not actionable; for they are not to be considered in *mitiori sensu*, and if possible to be innocently construed, as was the rule of construction at a very early period. But as was said by Mr. Justice Harris in *Pike* v. *Van Wormer*, (6 *Howard*, 99,) the words are to be taken in that sense in which they are generally understood, and when that puts upon them a guilty sense, they are actionable. (*See also Dias* v. *Short*, 16 *Howard* 322; *Walrath* v. *Nellis*, 17 *id.* 72; *Roberts* v. *Camden*, 9 *East*, 93; *Demarest* v. *Haring*, 6 *Cowen*, 76; *Starkie on Slander*, 45 *et seq.*) The rule has been well stated, thus: the words spoken are to be taken in their natural meaning, and according to common acceptation.

The word "kill," when used to denote the taking of the life of a human being by another, conveys the idea of guilt. So it was held, even when words were taken in *mitiori sensu*, that it was actionable to say of another that he had killed a person. It was anciently held that such charge was not actionable unless there was an averment that the person said to be killed was dead. But this rule has not obtained for a long time, as this must be intended against the defendant from his own assertion. (*Croswell* v. *Weed*, 25 *Wend.* 621.) In

Carroll *v*. White.

*Cooper* v. *Smith*, (*Cro. Jac.* 423,) the words " thou hast killed a man," were held to be actionable. In *Gardiner* v. *Spurdene* the words were " thou hast killed J. S."—held actionable; and it was said, " for although the killing may have been as an executioner or by accident, the words in the usual acceptation thereof mean felonious killing." (*See* 1 *Rolle's Abr.* 71; *Bacon's Abr.* 506 ; *Comyn's Digest, tit. Action on the Case for Defamation, D.* 2.) In *Button* v. *Hayward*, (8 *Mod. Rep.* 24,) the words were, " George But-ton is the man who killed my husband." They were held actionable. Pratt, chief justice, remarked that the word " killing" signifies a voluntary and unlawful killing. This case is cited at length, and with approval, in *Starkie on Slander*. In this case too, it was decided unnecessary to aver the death of a person whom the plaintiff was charged with killing. Pratt, chief justice, remarked, " the words them-selves ascertain the death of the person, and therefore there can be no necessity for any averment." There were several decisions to the same effect, before this. (*See also Stalling* v. *Newman*, 26 *Alab. Rep.* 300 ; *Croswell* v. *Weed*, 25 *Wend.* 621.) In *Hays* v. *Hays*, (1 *Humphrey*, [*Tenn.*] 402,) the words were, " You have killed one negro, and nearly killed another." On demurrer the circuit judge held the words not actionable. But this was reversed on appeal, when it was decided that the words imported a felonious killing. In *Taylor* v. *Casey*, (*Minor's Alab. Rep.* 258,) the words were, " You have killed my brother." It was urged that these words were not actionable, because one might kill another without crime or the slightest departure from moral rectitude. But the court held the words actionable, remarking that every homicide was judicially as well as to the common apprehen-sion of mankind deemed felonious, unless the circumstances of justification or excuse appear.

In *Ecart* v. *Wilson*, (10 *Serg. & Rawle*, 44,) the words were, " You have killed Bob Waters—you have poisoned him and I can prove it." On the trial the judge charged

that the natural and obvious meaning of the words used was that the plaintiff had been guilty of murder in killing Bob Waters, and that the words, in themselves, without further evidence, would be actionable; but held, further, that the action would not lie, because it appeared that Bob Waters was living at the time the words were spoken. On error the judgment was reversed, and a new trial ordered; the court holding that the action would lie notwithstanding Waters was living at the time the words were spoken—and in regard to the import of the words spoken, said that the charge was an " *asseveration of murder.*"

By the authorities, therefore, the words charged in the third count are actionable *per se.* They import a voluntary felonious killing, according to their natural sense and meaning. Every killing of a human being is homicide, and is justifiable, excusable, or felonious; and, as a general rule, all homicide is presumed to be malicious, and of course felonious, until the contrary appears from circumstances of alleviation, excuse or justification. (4 *Bl. Com.* 201. *Barb. Crim. Law,* 27.) The word *kill,* when applied to persons, implies force, violence, a destruction of the organs necessary to life, and if unaccompanied by any explanation or qualifying words, has a felonious signification. A threat to kill a person carries the idea of a felonious purpose.

The innuendo is that the defendant, by the speaking of the words, intended to charge the plaintiff with the crime of murder. This it seems is their natural and ordinary import and meaning, but if they amounted only to a charge of manslaughter, still they impute to the plaintiff the commission of an infamous crime punishable by law; and hence are actionable. The innuendo is of no importance in a pleading where the words laid are actionable in themselves. In such case it is wholly unnecessary to characterize the offense by an averment, and if the offense be improperly characterized in the innuendo it does not vitiate the pleading. So it was said in *Barrett* v. *Long,* (16 *Eng. L. and Eq. Rep.* 1,) that

an innuendo did not change the sense of the words charged, and if more extensive than the words, it might be rejected as repugnant and void—that the words, if slanderous, were actionable without its aid. And in *Carter* v. *Andrews,* (16 *Pick.* 1–5,) it was held that if the words imported a charge of felony or other infamous crime, punishable by law, an innuendo was useless and might be rejected as surplusage. To the same effect is the decision in *Croswell* v. *Weed,* (25 *Wend.* 621, 626.)

The plaintiff is entitled to judgment on the demurrer. But with liberty to the defendant to withdraw the demurrer, and answer on payment of costs.

[MONTGOMERY SPECIAL TERM, May 14, 1861. *Bockes,* Justice.]