CHARLES EDWARD VOSBURY, Appellant, v. UTICA DAILY PRESS COMPANY, Respondent.

Third Department, July 1, 1918.

Libel — newspaper article charging architect with general unskillfulness or general carelessness.

A newspaper article which states that the roof of a new city high school is in danger of falling; that " The architect has been notified, but has ignored the notification," and that " This development does not speak very well for those who designed and built * * * school " charges the architect with general unskillfulness or general carelessness, and the publication is libelous.

Where the specific act charged is of such a character that its performance of necessity involves general professional ignorance, want of skill or carelessness, the words are actionable.

JOHN M. KELLOGG, P. J., dissented.

APPEAL by the plaintiff, Charles Edward Vosbury, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Broome on the 2d day of April, 1918, dismissing the complaint, with notice of an intention to bring up for review an interlocutory judgment entered in said clerk's office on the 23d day of March, 1918, sustaining a demurrer to the complaint.

The final judgment was entered upon plaintiff's failure to pay the costs of the demurrer and to serve an amended complaint.

*Merchant, Waite & Waite,* for the appellant.

*Lewis, Foley & Foley* [*Arthur J. Foley* of counsel], for the respondent.

H. T. KELLOGG, J.:

In an action of libel the plaintiff complains of the publication of the following article: " Binghamton has a new $750,000 high school, which was first used when the fall term began. Yet eight hundred and fifty pupils of that same high school are in possible danger because of conditions which have come to the attention of the school board. The roof is in danger of falling. One portion of it has broken away

from the I-beams, and has sagged toward the floor. At present the roof is propped up, but if it should fall it would be disastrous to life and property. The architect has been notified, but has ignored the notification. An expert has been sent for, and precautions have been taken. This development does not speak very well for those who designed and built Binghamton's new high school." The plaintiff was the architect of the Binghamton High School.

It has been held that words which charge a professional man with unskillfulness in the performance of a particular act of his profession are not libelous *per se*. In *Foot* v. *Brown* (8 Johns. 65) it was said of an attorney in a particular suit " Foot knows nothing about the suit, and he will lead you on until he has undone you." The court said: " The words, as laid, only go to charge the plaintiff with ignorance or want of skill in the particular ejectment suit mentioned; and such charge is not actionable without laying and proving special damages." In *Twiggar* v. *Ossining Printing & Publishing Company* (161 App. Div. 718) it was said by a newspaper in relation to a case brought against a dentist for malpractice: " Suit against a dentist for alleged negligent services, causing the patient to spend over $200 with physicians and surgeons as a result of the ' unskillful and negligent ' way in which dental work was done, was entered today in the Supreme Court." It was held that the words were not libelous *per se*, as they imputed carelessness and unskillfulness in a particular case only. On the other hand, in *Secor* v. *Harris* (18 Barb. 425) the following words spoken of a physician were held to be libelous *per se*: " Doctor Secor killed my children. He gave them teaspoonful doses of calomel and they died." It was said by the court: " I am aware that it was held in the case of *Poe* v. *Mondford* (Cro. Eliz. 620) that it is not actionable to say of a physician ' He hath killed a patient with physic;' and that upon the strength of the authority of that case, it was decided in this court in *Foot* v. *Brown* (8 Johns. 64) that it was not actionable to say of an attorney or counsellor, when speaking of a particular suit, ' he knows nothing about the suit; he will lead you on until he has undone you.' These cases are not sound." Chief Justice HOSMER in *Sumner* v. *Utley* (7 Conn. 257) is quoted as saying: " As a general

principle, it can never be admitted that the practice of a physician or surgeon in a particular case may be calumniated with impunity, unless special damage is shown. By confining the slander to particulars a man may thus be ruined in detail. A calumniator might follow the track of the defendant, and begin by falsely ascribing to a physician the killing of three persons by mismanagement, and then, the mistaking of an artery for a vein, and thus might proceed to misrepresent every single case of his practice, until his reputation would be blasted beyond remedy. Instead of murdering character by one stroke, the victim would be cut successively in pieces, and the only difference would consist in the manner of effecting the same result." In *Carroll* v. *White* (33 Barb. 615) words used charging a physician with having "killed six children in one year" were held actionable. In *Lynde* v. *Johnson* (39 Hun, 12) it was said of a physician in reference to an amputation performed by him: "The plaintiff 'did it [cut off the arm] to get his name up and get a big fee.'" The words were held actionable, the court saying: "When words are spoken concerning a physician in reference to his treatment of a particular case, they may just as effectually injure his professional character and standing as when spoken of him generally in that respect, and when their natural and plain import and effect are such that they impute to him general professional ignorance or want of skill, the fact that they are spoken in reference to the treatment of a particular case does not render them less actionable, as matter of law, than if the words had been uttered in respect to the general professional character of the physician. But in view of the fact that competent and eminent physicians and surgeons may, without fault, mistake the symptoms and treatment of a particular case, words spoken of a physician in reference to it only, may by that fact be so qualified that unless they have an import and meaning which in effect reaches beyond the particular case and its treatment, and goes to affect the doctor's professional character, learning or skill, the law implies no damages as the consequences, and special damages are necessary to support the action."

The principle enunciated in *Foot* v. *Brown* has not, so far as I know, received the sanction of our court of last resort.

Now, it is the unquestionable rule that all words are actionable *per se* which tend to injure a person in his trade, occupation, profession or business. (*Moore* v. *Francis*, 121 N. Y. 199.) It must be self-evident that there are acts of professional misconduct of so grave a character that charges of their performance laid against a doctor, a lawyer, an engineer or other professional man would more certainly and more seriously injure than a statement of general unskillfulness. Thus, if it were said of a doctor that by mistake he amputated a sound leg, of a lawyer that he admitted in court the guilt of a client when the proven facts disclosed entire innocence, of an engineer that he so miscalculated that a railroad bridge collapsed, the professional man thus attacked would inevitably lose clients. Who would employ a doctor for an operation who had previously amputated a sound leg, or an engineer to build a bridge who had once figured so carelessly that it fell? It seems to me that the correct doctrine is, as stated in *Lynde* v. *Johnson* (*supra*), that where the specific act charged is of such a character that its performance of necessity involves general professional ignorance, want of skill or carelessness, the words are actionable.

In this case the article complained of, after stating that the roof of the Binghamton High School was in danger of falling, said: "This development does not speak very well for those who designed and built " the high school. It was clearly inferable from this statement that the architect had made a faulty design. Nothing, it seems to me, could injure an architect more than to charge that through his unskillful and careless drawings a great public building had either fallen or was about to fall. It occurs to me that no person who knew it would afterwards employ him. However, the article goes a step farther than merely charging a faulty design in a particular case. It says that the threatened fall of the roof " does not speak very well " for the architect. That which does not speak well of a man must, of course, speak ill of him; that which speaks ill of him must affect his character and give him a reputation which is damaging. Thus we find that this very article makes the charge of general unskillfulness or general carelessness, as shown by a specific instance.

For these reasons the judgments should be reversed and demurrer overruled, with costs, with usual leave to defendant to withdraw demurrer, and answer on payment of costs.

All concurred, except JOHN M. KELLOGG, P. J., dissenting.

Judgments reversed and demurrer overruled, with costs in this court and in the court below, with usual leave to defendant to withdraw demurrer and answer on payment of such costs.