Mike **GODBY** and Phillip Godby,
Appellants,

v.

**COMMONWEALTH** of Kentucky, Appellee.

Court of Appeals of Kentucky.

March 2, 1973.

Lester H. Burns, Jr., Meriel Harris, Somerset, for appellants.

Ed W. Hancock, Atty. Gen., Patrick B. Kimberlin, III, Asst. Atty. Gen., Frankfort, for appellee.

CULLEN, Commissioner.

Phillip Godby and his brother Mike were tried jointly on homicide charges growing out of the death of Teddy Hardwick. Phillip was found guilty of voluntary manslaughter and was given a 10-year sentence. Mike was found guilty of aiding and abetting in the commission of voluntary manslaughter and was given an 8-year sentence. They appeal from the judgment of conviction, asserting numerous grounds of error. Since one of those grounds is that the evidence was not sufficient to support conviction, we shall give a brief statement of the evidence.

The killing occurred at a point on a gravel road near the community of Kidder in Wayne County, around 11:30 p. m. on a night in October 1971. The victim, Hardwick, and three companions were standing beside Hardwick's car, drinking beer and listening to music on tape cassettes. A car driven by Mike Godby, with Phillip in the right front seat and Mike's wife and baby in the back, arrived on the scene and stopped. According to the testimony of two of Hardwick's companions, he approached the car and when four feet from it he leaned over to look into the car, whereupon he was shot by an occupant of the car. The third companion said that when the car approached and stopped, Hardwick said "There it is," and ran to the car; and that Hardwick was "up against" the car when he was shot.

One of Hardwick's companions said that earlier in the night, around 10 p. m., he and Hardwick alone were at the place in question when Mike Godby drove up, with his wife, stopped and got out, and Hardwick and Mike then engaged in a heated argument, following which Mike got into his car and left. Another of the compan-ions testified that shortly before the arrival of the Godbys which resulted in the shooting, Hardwick had been trying to find out where the Godbys lived and had said they had "better be finding them a place to go."

The two Godby brothers testified in their own defense (Mike's wife did not testify). Mike denied that he had been at the scene and argued with Hardwick earlier that night. The brothers' testimony was that Phillip was at a service station in Science Hill which the two brothers operated. Mike and his wife came by the station around 9:30 p. m. and the two brothers discussed some work they were doing on a septic-tank line at Mike's home. Around 11 p. m. they decided to go to see an uncle of Mike's wife, who lived on the gravel road near Kidder, to ask him to help with the work on the septic tank. They closed the filling station, first taking some $700 from the cash register, and got in Mike's car to go see the uncle. Phillip took his .32 caliber pistol from the station and laid it, in its holster, on the console between the two front bucket seats. The purpose in taking the pistol was to furnish protection for the cash register receipts. There was also, in the glove compartment, a .22 caliber pistol owned by Mike. When they arrived at the point where Hardwick and his companions were situated, the latter were blocking the road. Mike stopped the car, whereupon Hardwick ran up to the car, slammed his hand or beat his fist on the hood, yelled "Let's get them," and then ran to the side on which Phillip was sitting, reached through the window and started hitting Phillip. The latter reached for his pistol, took it out of the holster and undertook to raise it. Hardwick grabbed for it, the two men struggled over it, and the gun went off when Hardwick was pulling on it.

Admittedly, the gunshot killed Hardwick and the gun was in Phillip's hand or hands when the shot was fired. There was testimony from eye witnesses

that the shot was fired when Hardwick was four feet from the car. This was enough to sustain Phillip's conviction. The jury was not required to believe the brothers' story of self defense or of accidental and unintentional shooting.

■ As to Mike, the question was whether he was an aider and abettor or merely was an innocent bystander. It is our opinion that the evidence of the altercation at 10 p. m., and the trip back to the scene, on what well could be considered a pretense of visiting an uncle at 11:30 p. m. to talk about septic tanks, furnished the basis for an inference sufficient to sustain conviction, that Mike and Phillip deliberately returned to the scene with the intention of assaulting Hardwick but not to kill him, whereby Mike could be found to be an aider and abettor in voluntary manslaughter from a sudden affray. See Burris v. Commonwealth, 308 Ky. 145, 213 S. W.2d 1014; Hanna v. Commonwealth, 242 Ky. 584, 46 S.W.2d 1098.

The appellants claim insufficiency of the indictments to state a public offense, which point they raised by motions to dismiss, made first at the outset of the trial and repeated frequently during the trial. The indictment of Phillip charged that he "committed an offense by killing one Teddy Hardwick," while the indictment of Mike charged that he "committed an offense by aiding, assisting and abetting Phillip Godby in the killing of Teddy Hardwick." The appellants maintain that these indictments did not state an offense and did not authorize the giving of instructions on murder and voluntary manslaughter.

■ It is our opinion that the indictments, in using the words "offense by killing" and "offense by aiding and abetting * * * in the killing," adequately charged felonious homicide. Cf. People v. Kerrains, N.Y., 1 Thomp. & C. 333, 339; State v. Lynch, 20 Or. 389, 26 P. 219; State v. Williams, 17 Ark. 371, 377; Carroll v. White, N.Y., 33 Barb. 615, 620. If the indictments were too broad, in that they embraced all degrees of homicide, the remedy of the appellants was a motion to require the Commonwealth to elect. Cf. Dalton v. Commonwealth, Ky., 478 S.W.2d 734. The appellants do not maintain that they were misled or did not understand what they were accused of. On the backs of the indictments the indictments were stated to be for "Willful Murder" and for "Aiding and Abetting in the Commission of Willful Murder," and the bench warrants on which the defendants were arrested used the same descriptions of the offenses. We agree that the indictments were sloppy careless in form, but we think the substance was there. The omission of the citation of the statute defining the offense was not fatal if the defendants were not misled. RCr 6.10. We think this is an appropriate case for application of the rule stated in RCr 6.12, that an indictment shall not be deemed invalid for any defect or imperfection which does not tend to prejudice the substantial rights of the defendant on the merits.

The appellants make numerous charges of defects or errors in the instructions. We shall give a brief answer to each contention.

■ 1. The indictments and the evidence warranted the giving of instructions on murder and manslaughter.

■ 2. The instructions sufficiently "followed" the language of the indictments; instructions are not required to be *in* the language of the indictments.

■ 3. Since Instruction No. 1 required the jury to find beyond a reasonable doubt that Phillip shot Hardwick, the statement in Instruction No. 3 that the jury should find Phillip not guilty "if the shot which killed Teddy Hardwick was accidentally and unintentionally fired by the defendant Phillip Godby," was not reasonably to be interpreted as embodying an *assumption* that Phillip shot Hardwick, or as

telling the jury that the judge thought Phillip shot Hardwick.

■ 4. Since Instruction No. 3 was a *defensive* instruction, it would not have been proper for it to require the jury to believe *beyond a reasonable doubt* that the shooting was accidental or unintentional. The instruction correctly omitted that requirement.

■ 5. There is no rule that all instructions must follow the forms in Stanley's Instructions.

6. The evidence warranted the instructions submitting the issue of Mike's guilt as an aider and abettor.

■ 7. Since the primary instruction on self defense was predicated on the defendants' belief and reasonable grounds to believe that they or either of them were in danger of death or of great bodily harm and that it was necessary or apparently necessary to them in the exercise of reasonable judgment to shoot Hardwick to avoid the danger, real or to them reasonably apparent, it was not serious error for a following instruction, which qualified the right of self defense if the jury believed that the defendant brought on the difficulty, to use the phrase "if you believe from the evidence that any such danger existed."

■ 8. The evidence warranted the instruction which qualified the right of self defense if the jury believed that the defendants brought on the difficulty.

■ 9. Since the instruction which stated the conditions on which Mike could be found guilty of murder in aiding and abetting Phillip in the killing of Hardwick properly exonerated Mike if he acted in his necessary or to him apparently necessary self defense, there was no likelihood of prejudice from the fact that the following instruction, covering the lesser offense of aiding and abetting in voluntary manslaughter, used simply the phrase "when it was not necessary in his own defense;" and the latter instruction was not reasonably open to the interpretation that it *assumed* that Phillip shot Hardwick.

■ 10. The voluntary manslaughter instruction, which authorized the jury to fix the punishment at not less than two nor more than 21 years, was not erroneous in failing to add the words "in your discretion."

■ 11. The evidence was not such as to require the giving of instructions on involuntary manslaughter or accidental killing in the reckless handling of a gun.

The judgment is affirmed.

PALMORE, C. J., and MILLIKEN, OSBORNE, REED, STEINFELD and STEPHENSON, JJ., sitting.

All concur.