# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: JUNE 13, 2019
NOT TO BE PUBLISHED

**Supreme Court of Kentucky**

2018-SC-000197-MR

FINAL

DATE 7/5/19 *Kim Redmon, DC*

FELIX EDIL RIVERA-RODRIGUES          APPELLANT

V.

ON APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE PAMELA GOODWINE, JUDGE
NO. 15-CR-00303

COMMONWEALTH OF KENTUCKY          APPELLEE

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

A Fayette Circuit Court jury convicted Appellant, Felix Edil Rivera-Rodrigues, of murder and trafficking in a controlled substance. In accordance with the jury's recommendation, the trial court sentenced Rivera-Rodrigues to twenty-five years' imprisonment. Rivera-Rodrigues now appeals to this Court as a matter of right. Ky. Const. § 110(2)(b).

Rivera-Rodrigues asserts three claims of error in his appeal: (1) the trial court abused its discretion by allowing certain expert witness testimony, (2) the trial court erred by failing to require the Commonwealth to elect between legal theories of murder in his indictment, and (3) the trial court erred in denying Rivera-Rodrigues's motion to suppress. For the following reasons, we affirm Rivera-Rodrigues's convictions and corresponding sentence.

# I. BACKGROUND

Rivera-Rodrigues became the subject of a narcotics investigation in which Jesse Mayberry worked as a confidential informant with Kentucky State Police Detective Brandon Curless. During the investigation, Mayberry arranged to meet with Rivera-Rodrigues on four separate occasions to purchase cocaine. On each of these four occasions, recording devices and photographed cash were utilized. Mayberry contacted Rivera-Rodrigues at phone number 787-432-7056 to set up the controlled buys.

During the first two buys, Mayberry purchased cocaine from Rivera-Rodrigues without notable discussion. However, during the third buy, Rivera-Rodrigues talked to Mayberry about a Hispanic man who had failed to pay Rivera-Rodrigues for a kilogram of cocaine. Rivera-Rodrigues stated that the man was going to be murdered, and that he had someone to take care of it. However, later in his discussion with Mayberry, Rivera-Rodrigues voiced concerns about the person he had asked to commit the murder and, instead, offered Mayberry $8,000 to murder the man who owed him money. Rivera-Rodrigues told Mayberry about the selection of firearms he had for the gunman to choose from. After this interaction, Mayberry informed Detective Curless of Rivera-Rodrigues's statements. Detective Curless reviewed the recording and then contacted the Lexington Police Department, FBI, and DEA. Investigators decided to conduct a fourth controlled buy.

On the day of the third buy, Lexington police responded to a 911 call on Johnston Road. The officers observed a silver Saturn parked beside the road.

2

After approaching the sedan, officers had to physically remove a blood-covered woman. A man, Alejandro Dominguez, was also in the vehicle. Police observed Dominguez was slumped over in the backseat and covered in blood. Upon further examination, officers determined Dominguez was deceased. An autopsy revealed he died from multiple gunshot wounds.

During the fourth controlled buy, Rivera-Rodrigues discussed Dominguez's murder. Specifically, Rivera-Rodrigues told Mayberry that Dominguez was killed in the passenger's seat of a vehicle and moved to an SUV and later left in a truck on the side of the road.[1] Mayberry testified that Rivera-Rodrigues said he had met the victim to conduct a drug deal and Rivera-Rodrigues "came up to the car shooting."

The Forensic Services Unit of the Lexington Police Department collected physical evidence from the vehicle. This evidence included a small amount of cocaine from the rear driver's side floorboard and a receipt for scissors from a Family Dollar store (including the store's address and a time stamp).

Detective Buzzard of the Lexington Police Department's Forensic Services Unit testified that he was called to the scene to collect and document evidence. He said that there was a small amount of blood in the snow near the vehicle, and a large amount of blood inside the vehicle. Further, he said there was a bullet hole in the rear passenger door and two shell casings in the front seat.

---

[1] It is notable that Mayberry's testimony regarding Rivera-Rodrigues's statements indicates that the victim was found in a truck, whereas the victim was actually found in a four-door sedan.

Detective Tim Upchurch of the Lexington police department interviewed Rivera-Rodrigues. Officers questioned Rivera-Rodrigues about his whereabouts on the day of the murder and his knowledge of the victim and the murder. During the interview, the police revealed security footage from the Family Dollar store which showed Rivera-Rodrigues with his father-in-law purchasing scissors. Rivera-Rodrigues admitted to being at the store.

A Fayette Circuit Court grand jury indicted Rivera-Rodrigues on one count of murder and four counts of first-degree trafficking in a controlled substance, first offense (greater than four grams of cocaine).

At trial, Rivera-Rodrigues's cell phone became an issue. Thomas Neeman, a radio frequency engineer at Sprint, testified regarding historical cell-site data that was obtained during the investigation. He explained how phones communicate with towers and stated the tower coverage area in Lexington is divided into three sectors.[2] According to Neeman, each sector has its own antennae on the tower that point in different directions.

Neeman produced two exhibits that were entered into evidence. The first exhibit was a chart he prepared based on historical cell-site data that law enforcement obtained from Sprint for phone number 787-432-7056 for calls to and from that number on the day of the murder. This was the number at which Mayberry contacted Rivera-Rodrigues. The data showed start and end times for calls to that number, whether the call was incoming or outgoing, the

---

[2] At trial, the terms sector and vector were used interchangeably.

4

phone number on the other side of the call, and ID numbers corresponding to the specific cell to which the phone connected for these calls.

The second exhibit was a map prepared by Neeman. The map showed the locations of the towers and the sectors for each tower. While referencing these exhibits, Neeman testified regarding the tower locations and sectors that connected with the phone number 787-432-7056.

Ultimately, Rivera-Rodrigues was convicted of complicity to intentional murder and four counts of first-degree trafficking in controlled substance.[3] The jury recommended a twenty-five-year sentence on the murder conviction and a ten-year sentence on each trafficking charge, with all sentences to run concurrently. The trial court sentenced Rivera-Rodrigues accordingly to a total of twenty-five years' imprisonment. This appeal followed. We now affirm Rivera-Rodrigues's convictions and corresponding sentences.

## II. ANALYSIS

### 1. Expert Witness Testimony

Rivera-Rodrigues argues that the trial court abused its discretion by allowing Neeman to testify regarding the cellular sectors in Lexington. Specifically, he states that the report Neeman provided prior to trial in conformity with RCr 7.24 did not contain information regarding sectors or the particular sectors used by the phone number associated with Rivera-Rodrigues on the day of the murder. The Commonwealth counters this position, stating

---

[3] Rivera-Rodrigues admitted to the four drug-trafficking charges but contested the murder charge.

that the disputed testimony was not opinion testimony within the meaning of RCr 7.24.

On appeal, "[w]e will not disturb a trial court's decision to admit evidence absent an abuse of discretion." *Matthews v. Commonwealth*, 163 S.W.3d 11, 19 (Ky. 2005) *citing Partin v. Commonwealth*, 918 S.W.2d 219, 222 (Ky. 1996). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

Neeman presented testimony regarding the cellular towers, antennae, and sectors within the Lexington area as well as which sectors were used by the phone number which Mayberry utilized to contact Rivera-Rodrigues.

Rivera-Rodrigues emphasizes that defense counsel did not understand that Neeman would be testifying regarding sectors and the direction of the antennae, as it was not provided in the expert's report. However, defense counsel filed a motion in limine prior to trial seeking to preclude the Commonwealth from producing or otherwise using historical cellular telephone usage data to testify or otherwise argue as to the whereabouts of the defendant and other individuals during the relevant time frames, as such testimony would not comport with the requirements of the Kentucky Rules of Evidence or *Daubert*.

Further, during a bench conference, defense counsel stated that the report and the map which highlighted the cellular towers and sectors were emailed to defense counsel prior to trial. This belies the argument that the

6

expert disclosure was inadequate as it did not properly inform the defense of the subject of the expert opinions that would be adduced at trial.

In fact, the motion in limine states that "[c]ounsel therefore anticipates that the Commonwealth intends to argue at trial that this evidence is sufficient to be able to determine the relative location of the individuals involved in the killing during the relevant time frames." It is clear that Rivera-Rodrigues anticipated that the expert would testify regarding the cellular technology and connect the technology to the location of the phone number associated with Rivera-Rodrigues.

Rivera-Rodrigues cites this Court's decision in *Barnett v. Commonwealth*, 763 S.W.2d 119 (Ky. 1988), and states "*Barnett* stands for the principle that an expert may not testify to an additional undisclosed principle or premise not readily deducible from the conclusions contained in that expert's report." He supports this by stating that "*Barnett* was based upon the Supreme Court's desire to prevent a party from being deliberately surprised at trial." However, *Barnett* is distinguishable from the case at hand. In *Barnett*, this Court held it was reversible error for the Commonwealth's expert to testify regarding the expert's opinion that Barnett had washed away the blood from the victim. Specifically, this Court reasoned:

> Next, we consider the testimony of the Commonwealth's serologist who testified that there were faint traces of blood that could be found on the appellant's hands and arms, and then opined that this was attributable to washing away the blood that could have been expected from the victim's wounds. Appellant first contends that this was an impermissible speculation, rather than an opinion, there being no evidence from which it could be inferred that the appellant engaged in washing to support a hypothetical

7

question, as required by *Hodge v. Commonwealth*, 289 Ky. 548, 159 S.W.2d 422 (1942). The presence of a nearby puddle would support an inference, albeit weak, that there was at least an opportunity for the appellant to wash the blood off of his hands. This evidence was weak because the undisturbed condition of the puddle and of the appellant and of his clothing refuted the implication that washing had occurred. All things considered, we conclude that the serologist's conclusion was admissible as opinion evidence, but the appellant was entitled under RCr 7.24 to be confronted with the fact that this opinion would be presented against him before the trial started so that he had a reasonable opportunity to defend against the premise. RCr 7.24(1)(b) requires that on motion the Commonwealth must produce "results or reports of physical or mental examinations, and of scientific tests or experiments made in connection with the particular case." The appellant moved for this discovery and was provided a report which did not include this significant piece of information, the expert's opinion as to what the physical findings indicated. *James v. Commonwealth*, 482 S.W.2d 92 (Ky. 1972), suggests that this was error, and given the equivocal background circumstances, here it was reversible error.

*Id.* at 123.

As the Commonwealth points out, Rivera-Rodrigues was provided with Exhibit 71, which supported Neeman's testimony that sorted the relevant call data from the full set of raw data Sprint provided. Further, Rivera-Rodrigues was provided with Exhibit 72, a map Neeman used to show the cell phone towers the phone hit on as calls were made and received.

Neeman testified regarding the science of cellular technology. Unlike in *Barnett*, Neeman did not offer his opinion throughout his testimony. As the Commonwealth contends, had Neeman opined that the sectors revealed that Rivera-Rodrigues was in the area of the murder during the time it was committed, the testimony would have required disclosure—as it would have amounted to expert opinion testimony. However, Neeman did not testify to that

8

effect. Neeman testified explaining the sectors and which sectors were used by the phone number associated with Rivera-Rodrigues. He did not testify stating his opinion of Rivera-Rodrigues's location throughout the day of the murder.

This Court addressed the issue of testimony referring to cellular technology in *Holbrook v. Commonwealth*, 525 S.W.3d 73, 78 (Ky. 2017). In *Holbrook*, the trial court allowed testimony which paralleled Neeman's. This testimony was presented by a Special Agent, who explained the cellular technology such as the cellular towers and sectors as Neeman described. *Holbrook* held:

> We agree with the *Hill* Court, that the admission of historical cell-site evidence to establish an individual's location is a matter to be assessed carefully. Critically, Special Agent Horan's testimony expressly identified limitations in the scientific techniques he employed. Specifically, when asked about a particular call made by Bryant, Special Agent Horan explained that he was unable to identify the exact boundaries of the phone's "footprint" during the time of that call. Further, Special Agent Horan's testimony only established the general locations of the callers, rather than asserting the callers were at a fixed position. With these caveats established, Special Agent Horan's testimony permitted the jury to infer that Holbrook was near Bryant around the time that he disappeared. This testimony was relevant and probative and as such its admission was not an abuse of the trial court's discretion.

*Id.* at 82.

Just as in *Holbrook*, Neeman's testimony was relevant and probative. Although Neeman testified regarding the sectors that the phone number associated with Rivera-Rodrigues utilized the day of the murder, this testimony permitted the jury to infer that Rivera-Rodrigues was near the area of the

9

murder around the time it occurred. The trial court did not abuse its discretion in allowing Neeman's testimony.

While the foregoing analysis would dispose of the issue, the Commonwealth points out—and our full review of the record confirms—that the expert's report was not made part of the record before this Court. "It has long been held that, when the complete record is not before the appellate court, that court must assume that the omitted record supports the decision of the trial court." *Commonwealth v. Thompson*, 697 S.W.2d 143, 145 (Ky. 1985). Therefore, we must assume that if there are missing portions of the record provided to us, the missing portions support the trial court's decision.

As discussed, even if the report were adequately before this Court, the trial court's admission of the expert witness testimony would likely not amount to an abuse of discretion. However, because Appellant failed to include the report in the record before this Court, we cannot properly review this document to ensure that the notice comports with our disclosure rules and we must assume the omitted document supports the trial court's decision. *Thompson*, 697 S.W.2d at 145.

### 2. *Legal Theory*

Rivera-Rodrigues's indictment for murder reads:

On or about the 26th day of January, 2015, in Fayette County, Kentucky, the above named Defendant committed the offense of Murder by unlawfully causing the death of A.D. by shooting him and/or when, with the intention of promoting or facilitating the commission of the offense, the defendant solicited, commanded, or engaged in a conspiracy with another person, or persons, to commit the offense and/or aided, counseled, or attempted to aid

10

another person, or persons, in planning or committing the offense[.]

Rivera-Rodrigues filed a motion to compel the Commonwealth to elect the legal theory for which they intended to prosecute him at trial. He states that the indictment supposes three different legal theories of liability as to murder. RCr 6.12 reads:

> An indictment, information, complaint or citation shall not be deemed invalid, nor shall the trial, judgment or other proceedings thereon be stayed, arrested or in any manner affected by reason of a defect or imperfection that does not tend to prejudice the substantial rights of the defendant on the merits.

It is his position that the failure to elect a legal theory violated his Sixth and Fourteenth Amendment rights under the United States Constitution and Section Eleven of the Kentucky Constitution. He supports this position by citing *Godby v. Commonwealth*, 491 S.W.2d 647 (Ky. 1973), and stating that "[w]hile both of these legal theories arrive at the same result, they each rely on distinct evidence and require separate strategies for adequately preparing a defense."

Furthermore, Rivera-Rodrigues moved for a bill of particulars before trial. RCr 6.22;[4] "The function of the Bill of Particulars in a criminal case is to provide information fairly necessary to enable the accused to understand and prepare his defense against the charges without prejudicial surprise upon

---

[4]RCr 6.22 reads: The court for cause shall direct the filing of a bill of particulars. A motion for such bill may be made at any time prior to arraignment, or thereafter in the discretion of the court. A bill of particulars may be amended at any time subject to such conditions as justice requires.

11

trial." *Wolbrecht v. Commonwealth*, 955 S.W.2d 533, 538 (Ky. 1997) (other citations omitted). "It is a basic premise of the law that the granting of a bill of particulars, after an indictment has been returned addresses itself to the sound discretion of the trial court which will not be overturned on appeal unless there is an abuse of this discretion." *Deskins v. Commonwealth*, 512 S.W.2d 520, 524 (Ky. 1974). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

The motion for a bill of particulars states, in part, "the count in the indictment alleging murder is so vague as to imperil [Rivera-Rodrigues's] right to a fair trial, as he is not being adequately informed as to the charges against him." The trial court overruled the motion to compel and the motion for a bill of particulars, finding that the Commonwealth had a good-faith basis to proceed under the theories contained in the indictment.

Rivera-Rodrigues maintains the position that the indictment was so vague that it imperiled his right to a fair trial. He argued that:

> the indictment failed to allege the facts of the crime charged with sufficient specificity to meet the requirements of the Fifth Amendment of the United States and RCr 6.10(2)[5] which requires an indictment to contain a plain, concise and definite statement of

---

5 RCr 6.10 (2) reads: "The indictment or information shall contain, and shall be sufficient if it contains, a plain, concise and definite statement of the essential facts constituting the specific offense with which the defendant is charged. It need not contain any other matter not necessary to such statement, nor need it negative any exception, excuse or proviso contained in any statute creating or defining the offense charged."

12

the essential facts constituting the specific offense with which the defendant is charged.

The Commonwealth counters this argument, stating "[t]he crucial evidence from the controlled buy videos was more than adequate to charge Rivera-Rodrigues with murder un[der] multiple theories."

Rivera-Rodrigues cites *Godby* stating "[i]f the indictments were too broad, in that they embraced all degrees of homicide, the remedy of the appellants was a motion to require the Commonwealth to elect." 491 S.W.2d at 650, *citing Dalton v. Commonwealth*, 478 S.W.2d 734 (Ky. 1972). Rivera-Rodrigues argues that:

> [t]he indictment sets out enough detail as to intentional murder, but fails to adequately state how or when [Rivera-Rodrigues] engaged in a conspiracy to promote or facilitate the murder or how and when [Rivera-Rodrigues] aided, counseled, or attempted to aid another person in the planning or committing the offense.

He also argues:

> [Rivera-Rodrigues] had the right to know the specific allegations against him prior to trial so that he could adequately prepare a defense. It is clear that [Rivera-Rodrigues] knew about the murder because he talked about it to the confidential informant in an attempt to make himself seem like a tough guy. But simply knowing about a murder does not equal complicity.

As the Commonwealth states, the evidence fits all of the theories under which Rivera-Rodrigues was indicted. There was testimony presented that Rivera-Rodrigues discussed that he had someone to commit the murder as well as the fact that he offered Mayberry cash to commit the murder. The indictment satisfied the requirements under RCr 6.10(2), and the trial court did not abuse its discretion by overruling the motion to compel or the motion for a

13

bill of particulars.[6] The indictment stating three legal theories does not prejudice Rivera-Rodrigues's substantial rights. *See* RCr 6.12.

Pertaining to the three legal theories, (1) Rivera-Rodrigues stated to Mayberry that he had someone in place to commit the murder, (2) Rivera-Rodrigues offered Mayberry cash to commit the murder himself, and (3) Rivera-Rodrigues stated to Mayberry that he shot at the vehicle Dominguez was in. There was no barrier to Rivera-Rodrigues preparing for trial due to the lack of election.

### 3. *Motion to Suppress*

The police asked Rivera-Rodrigues to provide his cell phone number prior to advising him of his *Miranda* rights. He filed a motion to suppress his cell phone records on the basis that the records were obtained in violation of the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution and Sections 10 and 11 of the Kentucky Constitution. The trial court overruled the motion to suppress and found that officers asking someone his cell phone number is a routine question within the precedent established by *Dixon v. Commonwealth.* 149 S.W.3d 426 (Ky. 2004). It is important to note that Rivera-Rodrigues did not provide phone number 787-432-7056 to the police, which is the number on which Neeman based his testimony and from which the pertinent records were derived.

---

[6] The jury was instructed separately on intentional murder and complicity to intentional murder. Rivera-Rodrigues takes no issue with the jury instructions, but, rather just complains that the indictment precluded proper preparation for trial.

When reviewing a motion to suppress evidence, our analysis is two-fold. *Williams v. Commonwealth*, 364 S.W.3d 65, 68 (Ky. 2011). First, "[w]e review the trial court's factual findings for clear error, and deem conclusive the trial court's factual findings if supported by substantial evidence." *Id.* at 68. We review the trial court's application of the law to the facts de novo. *Id.*

At trial, the Commonwealth argued that the routine booking questions exception to *Miranda*, as recognized in *Dixon*, applied to the police's question regarding Rivera-Rodrigues's phone number. *Id.* at 431-32. As discussed above, the trial court agreed, using *Dixon* as its reasoning to overrule the motion to suppress. Specifically, the trial court held "the motion is going to be overruled, the court does believe that asking someone [his] cell phone number, according to *Dixon v. Commonwealth*, is routine . . . ."

Rivera-Rodrigues does not challenge the trial court's factual findings. We find them to be supported by substantial evidence, and so they are binding upon our review.

Rivera-Rodrigues contends that "the office[r] asked for his cell phone number and provider because it was 'reasonably likely to elicit an incriminating response'" and thus the cell phone records related to him should have been suppressed as fruit of the poisonous tree. Specifically, Rivera-Rodrigues's motion sought suppression of (1) his non-*Mirandized* responses to police booking questions, (2) cell phone records that were obtained without the proper legal process, and (3) all evidence recovered from the search of Rivera-Rodrigues's phone.

15

We undertake a de novo review of the trial court's application of the law to the facts to determine whether its decision to overrule the motion to suppress was correct as a matter of law. *Williams* 364 S.W. 3d at 68.

Upon arriving at the police station, Rivera-Rodrigues was asked for his cell phone number. It is his position that this question was a custodial interrogation and he had not been *Mirandized,* therefore the evidence obtained as a result of this information should be excluded as fruit of the poisonous tree.

However, as discussed above, Rivera-Rodrigues did not provide phone number 787-432-7056 which Neeman utilized throughout his testimony. Instead, he provided his old phone number and his girlfriend's phone number prior to being *Mirandized.* Therefore, it is immaterial whether the police asking for the phone number was a routine booking question. The information Rivera-Rodrigues provided in response did not lead to the evidence he later sought to suppress.

## III.    CONCLUSION

For the foregoing reasons, we affirm the trial court.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Robin Renee Slater
Lexington, KY


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Joseph A. Newberg II
Assistant Attorney General