Kenneth WILLIAMS, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2010–SC–000138–DG.

Supreme Court of Kentucky.

Nov. 23, 2011.

Bruce P. Hackett, Chief Appellate Defender, Office of the Louisville Metro Public Defender, Daniel T. Goyette, Louisville Metro Public Defender, Annie O'Connell, O'Connell Law Office, Louisville, KY, for appellant.

Jack Conway, Attorney General of Kentucky, Micah Brandon Roberts, Assistant Attorney General, Office of Criminal Appeals, Frankfort, KY, for appellee.

Opinion of the Court by Chief Justice MINTON.

Under *Terry v. Ohio*,[1] a police officer may briefly detain a person for investigative purposes if the officer has a reasonable suspicion, supported by articulable

---

1. 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

facts, that the person has engaged or is about to engage in criminal activity. And if the officer believes the detained person is armed and dangerous, the officer may also frisk for weapons.

When police detained Kenneth Williams, he was among a group of nine people, some of whom the police observed openly engaging in illegal drug activity and some of whom the police found in possession of handguns. Williams argues that: the group's activities did not create reasonable suspicion of criminal activity particularized to him to justify a *Terry* detention. Denying Williams's motion to suppress the handgun seized during the patdown that followed the detention, the trial court found that Williams was part of a distinct group whose conduct aroused sufficient reasonable suspicion for the officers to detain Williams. The Court of Appeals affirmed the trial court's order on appeal. We granted discretionary review and affirm.

## I. FACTUAL AND PROCEDURAL HISTORY.

The grand jury indicted Williams for possession of a handgun by a convicted felon, carrying a concealed deadly weapon, and loitering. Before trial, he moved to suppress the handgun seized from him that served as a basis for the weapons charges. Williams asserted that the handgun was the product of an unconstitutional stop and patdown of his person.

At the evidentiary hearing on the suppression motion, the arresting officer was the sole witness. He testified that police received a call concerning several people loitering and smoking drugs on a public street. At the street location identified by the caller, the officer and his partner found nine individuals—one of whom was Williams—in front of a vacant house. As the officers watched, some of the individuals (but not Williams) smoked marijuana cigars. When two backup detectives arrived, two officers approached the group on foot while two officers approached in an unmarked police car.

When the group members realized the police had arrived, those smoking marijuana threw their cigars to the ground; and several (but not Williams) began to move away. The testifying officer approached and questioned one of the group who was backing up the steps of the vacant house. That person admitted that a large bulge in his pocket was a bag of marijuana. Meanwhile, another officer announced "gun" as he discovered a handgun concealed on another member of the group. And a third officer announced "gun" as he found another handgun on a different person. At this point, the testifying officer ordered the remainder of the group, including Williams, to lie down on the ground and to tell the officers if they had weapons.

Williams was on crutches, leaning against a vehicle in front of the house. When Williams lay on the ground, the officer saw a bulge in the middle of his back. The officer touched the bulge and realized it was a handgun. A loaded Smith and Wesson 9mm handgun was tucked into the waistband of Williams's pants and covered by his shirt.

After the trial court denied his motion to suppress the handgun, Williams entered a conditional plea of guilty to possession of a handgun by a convicted felon, carrying a concealed deadly weapon, and loitering. But he reserved the right to appeal the trial court's denial of his motion to suppress. In accordance with the Commonwealth's recommendation in the plea agreement, the trial court sentenced Williams to a total of five years' imprisonment and imposed a $250 fine for loitering.

## II. ANALYSIS.

The standard of review for a trial court's ruling on a suppression motion is two-fold. We review the trial court's factual findings for clear error, and deem conclusive the trial court's factual findings if supported by substantial evidence.[2] The trial court's application of the law to the facts we review de novo.[3]

### A. Substantial Evidence Supports the Trial Court's Factual Findings.

Williams argues that several of the trial court's factual findings are not supported by substantial evidence. He contends the officer's testimony does not support the court's findings that (1) the nine individuals comprised a distinct group and (2) the individuals were milling about and acting restless. We disagree.

Based on the officer's testimony, we find that substantial evidence supports the trial court's findings. At the evidentiary hearing, the officer testified that nine people were arrayed in close proximity to each other in front of the vacant house when he and his partner arrived. The nine individuals were standing on the sidewalk, sitting on a retaining wall, standing in the street, and sitting on a parked vehicle. The same nine individuals were present throughout the ten to fifteen minutes that the officers watched the group before moving in. The officer described them as talking together and otherwise interacting as a group. This testimony provided sufficient evidence to support the trial court's finding that the nine individuals comprised a distinct group.

When the group members realized the presence of the police, several of them tried to leave the scene. One person tried to back up the steps of the vacant house, a second attempted to ride away on a bicycle, and a third started to walk away. Those smoking marijuana threw down their cigars. Although the officer never specifically described the group as being restless and milling about when the officers arrived,[4] the trial court's finding of those facts is not clearly erroneous.

### B. The Stop was Constitutional.

Williams contends the stop was unconstitutional because the police did not have a reasonable, articulable suspicion that he was engaged in criminal activity.[5] We disagree.

The Fourth Amendment of the U.S. Constitution—applicable to the states through the Fourteenth Amendment—and Section 10 of the Kentucky Constitution provide safeguards against unreasonable searches and seizures. "Section 10 of the Kentucky Constitution provides no greater protection than does the federal Fourth Amendment." [6]

A person is *seized* under the Constitution when, based on the totality of the circumstances, a reasonable person

---

2. *Bauder v. Commonwealth*, 299 S.W.3d 588, 591 (Ky.2009) (citations omitted); Kentucky Rules of Criminal Procedure (RCr) 9.78.

3. *Commonwealth v. Kelly*, 180 S.W.3d 474, 476–77 (Ky.2005) (citations omitted).

4. During cross-examination of the officer at the evidentiary hearing, Williams's counsel described six of the individuals—those not immediately engaged by the police—as "standing there and milling around."

Williams cannot now complain that the trial court adopted his counsel's characterization of the facts.

5. Williams apparently concedes that if the detention was permissible, then the patdown and discovery of the gun were also permissible.

6. *LaFollette v. Commonwealth*, 915 S.W.2d 747, 748 (Ky.1996) (citation omitted).

would believe he is not free to leave.[7] Investigatory stops, *Terry* stops,[8] are less intrusive than an arrest and their reasonableness "depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers."[9] Police may conduct an investigatory stop if they have "reasonable suspicion based upon objective, articulable facts that criminal activity is afoot"[10] considering the totality of the circumstances.[11] If an "officer is entitled to make a forcible stop[ ] and has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose."[12] "[T]he level of articulable suspicion necessary to justify a stop is considerably less than proof of wrongdoing by preponderance of the evidence."[13]

Williams argues his detention was unconstitutional based on *Ybarra v. Illinois*[14] because the police did not have reasonable, articulable suspicion of criminal activity particularized to him. In that case, the Supreme Court warned that "the 'narrow scope' of the *Terry* exception does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked."[15] But *Ybarra* is distinguishable from this case. In *Ybarra*, police executed a search warrant of a tavern based on suspected drug trafficking by the bartender.[16] Upon entering the tavern, police frisked every patron and discovered heroin on Ybarra.[17] The Court held that the police were not justified in searching Ybarra for weapons merely because he "happen[ed] to be on premises where an authorized narcotics search [was] taking place."[18] Unlike Ybarra, Williams was not a patron of a public establishment who just happened to be there when the police arrived; he was in a distinct group of nine people gathered in front of a vacant house. Members of this group openly used drugs in this public place and possessed handguns. This gave police (who observed the activities of this group for several minutes) reasonable, articulable suspicion of criminal activity among the group and justified an investigatory stop of its members.

 We recognize that a person's mere presence in a high-crime area at night is not alone sufficient evidence to

7. *Strange v. Commonwealth*, 269 S.W.3d 847, 851 (Ky.2008) (citations omitted).

8. *Terry*, 392 U.S. 1, 88 S.Ct. 1868 (1968) (*Terry* stops occur when a police officer accosts an individual and restrains his or her freedom to walk away and carefully explores the outer surfaces of the person's clothing in attempt to find a weapon.).

9. *Brown v. Texas*, 443 U.S. 47, 50, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979) (internal quotation marks and citations omitted).

10. *Strange*, 269 S.W.3d at 850 (citations omitted).

11. *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

12. *Adams v. Williams*, 407 U.S. 143, 146–47, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) (citations omitted); *See also Ybarra v. Illinois*, 444 U.S. 85, 92–94, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979).

13. *Commonwealth v. Banks*, 68 S.W.3d 347, 351 (Ky.2001) (*citing United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)).

14. 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979).

15. *Id.* at 94, 100 S.Ct. 338.

16. *Id.* at 88, 100 S.Ct. 338.

17. *Id.* at 88–89, 100 S.Ct. 338.

18. *Ybarra*, 444 U.S. at 94, 100 S.Ct. 338.

justify a *Terry* stop.[19] And mere association with a person who is independently engaged in criminal activity is not enough to support an investigatory stop and search.[20] But we agree with the United States Court of Appeals for the Sixth Circuit that "such association is part of the practical considerations of everyday life[,] which can be considered in determining whether there is probable cause[,]"[21] and, we hold, whether reasonable, articulable suspicion exists for a *Terry* stop.

Police had reasonable, articulable suspicion of criminal activity to justify the *Terry* stop of Williams. He was part of a distinct group of nine people loitering in front of a vacant house. Police observed two or more members of the group smoking marijuana, and one person admitted to police that he possessed a bag of marijuana. When police approached, they quickly discovered two handguns on two different people. So the officers had reasonable, articulable suspicion of drug use and the potentially dangerous presence of concealed deadly weapons justifying an investigatory stop of all the persons in this group. Once the officer made the constitutional investigatory stop, he had reason to believe that Williams was armed and dangerous because the officer saw the bulge created by the handgun concealed in Williams's clothing in the center of Williams's back. So we find that this seizure of Williams was a constitutional *Terry* stop.

### III. CONCLUSION.

For the foregoing reasons, we affirm the trial court's decision to deny Williams's motion to suppress evidence and judgment of conviction.

All sitting. All concur.

---

19. *Strange,* 269 S.W.3d at 852.

20. *Ybarra,* 444 U.S. at 91, 100 S.Ct. 338 (citation omitted).

21. *United States v. Davis,* 430 F.3d 345, 352 (6th Cir.2005) (internal quotation marks and citations omitted).