Joshua MONTGOMERY, Appellant

v.

COMMONWEALTH of Kentucky, Appellee

NO. 2015–CA–001844–MR

Court of Appeals of Kentucky.

DECEMBER 2, 2016

BRIEF FOR APPELLANT: Steven J. Buck, Frankfort, Kentucky

BRIEF FOR APPELLEE: Andy Beshear, Attorney General of Kentucky

J. Todd Henning, Assistant Attorney General, Frankfort, Kentucky

BEFORE: ACREE, J. LAMBERT, AND THOMPSON, JUDGES.

## OPINION

J. LAMBERT, JUDGE:

Joshua Montgomery appeals from the Morgan Circuit Court's judgment and sentence following jury trial, entered July 17, 2015. After careful review, we affirm in part, reverse in part and remand for entry of a new judgment of conviction.

On October 28, 2014, the appellant, Joshua Montgomery, got into a heated argument with his parents at their home in Hazel Green, Kentucky, over Montgomery's desire to use the family van. Montgomery, 27 years old, did not have a driver's license and so his parents forbade him from taking the vehicle. The argument es-

calated when Montgomery indicated he was already in possession of the keys and began walking toward the van. In response, his mother rushed into the driver's seat herself in order to prevent him from entering the vehicle. Montgomery then armed himself with a baseball bat and threatened to break out the van's windows unless his mother got out of the van. At this point, Montgomery's father telephoned 9–1–1 for assistance.

Trooper Charlie Bolin of the Kentucky State Police was dispatched to the home. Upon arrival, Montgomery's father warned Trooper Bolin that his son had stated a willingness to fight any law enforcement officer who arrived. Montgomery, standing on the front porch, yelled, "If that's the state police, it's not going to be good." As Trooper Bolin approached, passing two vans parked in front of the house, Montgomery ran down the porch steps toward him with his baseball bat resting on his shoulder. Trooper Bolin drew his Taser and shouted a warning to stop, but Montgomery continued his charge. Trooper Bolin used his Taser upon Montgomery from a distance of approximately fifteen feet. Montgomery was struck by the Taser and stopped for approximately two seconds, before raising the bat off of his shoulder and resuming his charge. Trooper Bolin dropped the Taser and backed away to draw his handgun. As he did so, Montgomery stopped his advance and ran around the parked vans. Trooper Bolin ran between the vans in an attempt to intercept him. When Trooper Bolin regained visual contact of Montgomery, he was again standing near the porch, with his bat on the ground and a large, military-style knife

in his hand. Trooper Bolin warned Montgomery if he took one step closer he would shoot him. He then instructed Montgomery to drop the knife and get on his knees. After some hesitation, Montgomery finally began to comply with directions. Trooper Bolin approached with his handcuffs, kicking the knife away as he moved closer. The trooper then placed one handcuff on Montgomery's left wrist and was in the process of securing the right wrist, when Montgomery pulled his arm away and tried to stand up. Trooper Bolin forced Montgomery back to his knees, and ordered him to stop resisting, Montgomery complied and Trooper Bolin was able to finish handcuffing him.

Trooper Bolin placed Montgomery under arrest for first-degree wanton endangerment[1] and resisting arrest.[2] Upon being presented with the case, the grand jury added a count of third-degree assault.[3] Following a two-day trial, the jury found Montgomery guilty of third-degree assault, second-degree wanton endangerment,[4] and resisting arrest. The jury fixed his punishment at five-years' imprisonment for the assault conviction, twelve months for wanton endangerment, and thirty days for resisting arrest. In accord with the jury's recommendation, the trial court entered final judgment on July 17, 2015, sentencing Montgomery to a concurrent term of five years in prison. This appeal follows.

Montgomery argues three issues before this Court, the first of which is that the trial court should have granted a directed verdict of acquittal on all charges. In par-

1. Kentucky Revised Statutes (KRS) 508.060.

2. KRS 520.090.

3. KRS 508.025, a Class D felony.

4. KRS 508.070. The jury was instructed on second-degree wanton endangerment as a lesser included offense to the original charge of first-degree wanton endangerment. Second-degree wanton endangerment and resisting arrest are both Class A misdemeanors.

ticular, Montgomery contends that Trooper Bolin did not suffer an injury and there was no credible attempt to injure him, as required for the assault conviction; the trooper was never in substantial danger of physical injury from Montgomery's actions, as required for wanton endangerment; and Montgomery's minor movements upon being handcuffed were not sufficient to charge him with resisting arrest.

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.
>
> On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.

*Perdue v. Commonwealth,* 411 S.W.3d 786, 790 (Ky. App. 2013) (citing *Commonwealth v. Benham,* 816 S.W.2d 186, 187 (Ky. 1991). Furthermore, "[t]o defeat a directed verdict motion, the Commonwealth must only produce 'more than a mere scintilla of evidence.'" *Lackey v. Commonwealth,* 468 S.W.3d 348, 352 (Ky. 2015) (quoting *Benham,* 816 S.W.2d at 187).

■ Considering the evidence as a whole and in the light most favorable to the Commonwealth, we cannot state that it was "clearly unreasonable for a jury to find guil[.]" *Benham,* 816 S.W.2d at 187. Testimony from a law enforcement officer amounts to substantial evidence. *See, e.g., Chavies v. Commonwealth,* 354 S.W.3d 103, 108 (Ky. 2011); *Williams v. Commonwealth,* 364 S.W.3d 65, 68 (Ky. 2011); and *Payton v. Commonwealth,* 327 S.W.3d 468, 471–72 (Ky. 2010). Furthermore, "substantial evidence is more than a scintilla." *Johnson v. Commonwealth,* 412 S.W.3d 157, 166 (Ky. 2013) (quoting *CertainTeed Corp. v. Dexter,* 330 S.W.3d 64, 72 (Ky. 2010)). Despite the appellant's contentions regarding a purported lack of evidence, Trooper Bolin clearly testified that Montgomery was charging toward him with a raised baseball bat. Third-degree assault, as defined in KRS 508.025, requires a showing that "the actor... intentionally causes or attempts to cause physical injury to... [a] state, county, city, or federal peace officer[.]" Montgomery was never given the opportunity to swing the bat, but his actions nonetheless demonstrated an attempt to cause physical injury to a peace officer.

■ It was also not clearly unreasonable for the jury to find guilt on the charge of resisting arrest. The relevant portion of the statute, KRS 520.090(1)(a), requires a showing that the individual prevents or attempts to prevent arrest by "[u]sing or threatening to use physical force or violence against the peace officer or another[.]"[5] Trooper Bolin's testimony indicates Montgomery pulled his arm away and tried to stand while being handcuffed. Although this presents a closer question for directed verdict than the third-degree assault charge, Montgomery's actions arguably constituted an application of physical

---

**5.** KRS 520.090(1)(b) provides that one may also resist arrest by "[u]sing any other means creating a substantial risk of causing physical injury to the peace officer or another." The jury in this case, however, was not instructed on this portion of the statute.

force against an officer, in an attempt to prevent lawful arrest. Drawing all reasonable inferences in favor of the Commonwealth, we believe it was not clearly unreasonable to submit this question to the jury. Accordingly, we find the circuit court did not err in denying Montgomery's motions for directed verdict on third-degree assault and resisting arrest.

 We need not consider whether the wanton endangerment charge warranted a directed verdict, because we agree with Montgomery's second argument: his convictions for second-degree wanton endangerment and third-degree assault violated the constitutional prohibition against double jeopardy. "The double jeopardy clause of the Fifth Amendment to the United States Constitution provides in pertinent part that no person shall 'be subject for the same offence to be twice put in jeopardy of life or limb.' Kentucky's Constitution includes a virtually identical provision in § 13." *Commonwealth v. Burge*, 947 S.W.2d 805, 809 (Ky. 1996). "Double jeopardy does not occur when a person is charged with two crimes arising from the same course of conduct, as long as each statute 'requires proof of an additional fact which the other does not.'" *Id.* (quoting *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932)). "If, however, the exact same facts could prove the commission of two separate offenses, then the double jeopardy clause mandates that while a defendant may be prosecuted under both offenses, he may be convicted under only one of the statutes." *Clark v. Commonwealth*, 267 S.W.3d 668, 675 (Ky. 2008).

 The Commonwealth responds by stating the double jeopardy issue is not preserved. However, "'the constitutional protection against double jeopardy is not waived by failure to object at the trial level.'" *Little v. Commonwealth*, 422 S.W.3d 238, 248 (Ky. 2013) (quoting *Walden v. Commonwealth*, 805 S.W.2d 102, 105 (Ky. 1991)). The Commonwealth further argues that each of Montgomery's convictions requires proof of a fact which the other does not. We disagree. Montgomery's conviction for third-degree assault required the jury to find he attempted to physically injure Trooper Bolin, a state peace officer acting in his official capacity, "by charging at him with a raised baseball bat." The second-degree wanton endangerment conviction required the jury to find Montgomery "charged toward [Trooper] Bolin with a raised baseball bat; AND ... [t]hat he wantonly created a substantial danger of physical injury to [Trooper] Bolin." Examining the requirements for conviction, it is clear third-degree assault requires proof of an element wanton endangerment does not, which is that the target of the attack is a state peace officer.

 The difficulty arises when examining the requirements for conviction of second-degree wanton endangerment and attempting to find an element not already present in Montgomery's assault charge. Both instructions contain the same offending conduct, which is that Montgomery charged at the trooper with a raised baseball bat. The only distinction is that of *mens rea*. Wanton endangerment requires a "wanton" mental state creating a "substantial danger of physical injury." Third-degree assault, as applied here, requires finding that the actor *intentionally* caused or attempted to cause physical injury. Pursuant to the Kentucky General Assembly's codification of double jeopardy principles, a defendant "may not, however, be convicted of more than one (1) offense when ... [i]nconsistent findings of fact are required to establish the commission of the offenses[.]" KRS 505.020(1)(b). The jury could have found Montgomery's charge

against Trooper Bolin was intentional, resulting in assault, or it was wanton, resulting in wanton endangerment. Allowing both convictions, however, requires the jury to make inconsistent findings—that Montgomery was motivated by two different mental states for the same act against the same person. " '[T]he Commonwealth is permitted to carve out of a single criminal episode the most serious offense, but not to punish a single episode as multiple offenses.' " *Clark v. Commonwealth*, 267 S.W.3d 668, 678 (Ky. 2008) (quoting *Commonwealth v. Burge*, 947 S.W.2d 805, 811 (Ky. 1996)). The remedy for a double jeopardy violation is to vacate the lesser of the two offenses. *Id.* Therefore, we reverse Montgomery's misdemeanor conviction of second-degree wanton endangerment. This reversal does not affect the overall length of Montgomery's sentence, as the trial court directed the sentence for wanton endangerment to run concurrently with the appellant's five-year sentence for assault.

 For his final issue, Montgomery argues the trial court erred to his substantial prejudice by permitting Trooper Bolin to testify about his prior dealings with him. Specifically, Trooper Bolin testified on two occasions, once on direct examination and once on cross-examination, that he knew Montgomery through "that theft case." There is some question as to whether this issue is properly preserved, and in the event that it is not, the appellant requests palpable error review under RCr[6] 10.26.[7] On the morning of the first day of trial, Montgomery's defense counsel made an oral motion to restrict Commonwealth witnesses from testifying about Montgomery's prior bad acts, convictions, or conduct. The Commonwealth indicated Trooper Bolin had already been instructed not to mention these matters in his testimony. However, when Trooper Bolin twice mentioned "that theft case," defense counsel made no contemporaneous objection to either reference. Motions in limine can preserve issues for appellate review, provided they are sufficiently detailed about what the moving party intends to exclude. *Lanham v. Commonwealth*, 171 S.W.3d 14, 22 (Ky. 2005). In the event these motions are not detailed, preservation of the issue also requires a contemporaneous objection, because "the trial judge cannot be expected to then infallibly recognize the point at which those evidentiary boundaries have been crossed, and respond *sua sponte* with an unsolicited ruling." *MV Transp., Inc. v. Allgeier*, 433 S.W.3d 324, 332 (Ky. 2014).

 Because Montgomery's oral motion before the trial court was not specific as to the particular testimony it sought to exclude, we find that the lack of a contemporaneous objection means we may only review for palpable error resulting in manifest injustice, pursuant to RCr 10.26. "Manifest injustice" requires a showing of the probability of a different result, or that the error in the proceeding was of such magnitude as to be "shocking or jurisprudentially intolerable." *Martin v. Commonwealth*, 207 S.W.3d 1, 3–4 (Ky. 2006). Although character evidence is generally excluded, with notable exceptions,

---

6. Kentucky Rules of Criminal Procedure.

7. "Under Criminal Rule 10.26, an unpreserved error may only be corrected on appeal if the error is both palpable and affects the substantial rights of a party to such a degree that it can be determined manifest injustice resulted from the error. For error to be palpable, it must be easily perceptible, plain, obvious and readily noticeable. The rule's requirement of manifest injustice requires showing a probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Young v. Commonwealth*, 426 S.W.3d 577, 584 (Ky. 2014) (citations and internal quotation marks omitted).

under KRE [8] 404, Trooper Bolin's two references to "that theft case" were minor slips in his testimony. There were only two such references over two days of testimony. The references were also vague, with nothing to indicate whether Montgomery was a perpetrator or suspect in the theft— as far as the jury knew, Montgomery may have been a witness or a victim. We find the two references to "that theft case" do not rise to the level of manifest injustice required for reversal under RCr 10.26 and *Martin,* and thus decline to find palpable error.

For the foregoing reasons, we reverse the judgment of the Morgan Circuit Court as to the conviction for second-degree wanton endangerment, but affirm as to all other issues, including the length of Montgomery's sentence based on other convictions in this case. We remand for entry of a new judgment of conviction consistent with this opinion.

ACREE, JUDGE, CONCURS.

THOMPSON, JUDGE, CONCURS IN RESULT ONLY.

---

8. Kentucky Rules of Evidence.