# IMPORTANT NOTICE
# NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: DECEMBER 13, 2018
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2017-SC-000344-MR

DATE 1/3/19 Kim Redmon, DC

BENJAMIN ROCHAT            APPELLANT

ON APPEAL FROM KENTON CIRCUIT COURT
V.           HONORABLE GREGORY M. BARTLETT, JUDGE
NO. 15-CR-00723

COMMONWEALTH OF KENTUCKY           APPELLEE

## MEMORANDUM OPINION OF THE COURT

## REVERSING AND REMANDING

On or about Saturday, July 26, 2015, Bridgett Robinson awoke early in the morning to find her then-boyfriend, Appellant, Benjamin Michael Rochat, in the living room with his head covered by a blanket and in between her six-year-old granddaughter's legs. The victim's underwear was pulled down around her ankles. Robinson immediately confronted Rochat. He allegedly told her "sorry" repeatedly and that "he was not in his right mind." On July 27, after Rochat left for work as a truck driver, Robinson tried to speak with her granddaughter about the event, but the victim would not talk about it. Robinson called the police that evening and gave a witness statement.

Shortly thereafter, a warrant was issued for Rochat's arrest. On August 3, Rochat was arrested while on a delivery route in Illinois. On September 17, a Kenton County grand jury indicted Rochat for one count of first-degree sodomy. On October 5, Rochat entered a plea of not guilty at his arraignment.

Trial began on April 25, 2017. After hearing the evidence at trial, the jury found Rochat guilty of one count of first-degree sodomy of a victim under twelve years of age: a Class A felony. At sentencing, the trial court adopted the jury's recommendation and sentenced Rochat to thirty years' imprisonment. Rochat now appeals his conviction and sentence to this Court as a matter of right pursuant to Section 110 of the Kentucky Constitution.

## Analysis

Rochat contends that it was error for the trial court to deny his request for an instruction on the lesser included offense of first-degree sexual abuse. "[A] trial court's decision on whether to instruct on a specific claim will be reviewed for abuse of discretion . . . ." *Sargent v. Shaffer*, 467 S.W.3d 198, 204 (Ky. 2015). A trial court abuses its discretion if "the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

"Construing the evidence favorably to the proponent of the instruction, we ask whether the evidence would permit a reasonable juror to make the finding the instruction authorizes." *Allen v. Commonwealth*, 338 S.W.3d 252, 255 n.1 (Ky. 2011). Correspondingly, a trial court must only give a lesser included offense instruction "if, but only if, considering the totality of the

2

evidence, the jury might have a reasonable doubt as to the defendant's guilt of the greater offense, and yet believe beyond a reasonable doubt that he is guilty of the lesser offense." *Jenkins v. Commonwealth*, 496 S.W.3d 435, 449 (Ky. 2016) (citations omitted).

First, we must delineate between the two crimes. "A person is guilty of sodomy in the first degree when . . . [h]e engages in deviant sexual intercourse with another person who is incapable of consent because he . . . [i]s less than twelve (12) years old." KRS 510.070(1)(b)2. The element of "deviant sexual intercourse" means "any act of sexual gratification involving the sex organs of one person and the mouth or anus of another." KRS 510.010(1).

"A person is guilty of sexual abuse in the first degree when . . . [h]e or she subjects another person to sexual contact who is incapable of consent because he or she . . . [i]s less than twelve (12) years old." KRS 510.110(1)(b)2. As opposed to sodomy, sexual abuse only requires "sexual contact" in general, which means "touching of the sexual or other intimate parts of a person." KRS 510.010(7). "The distinction between the two offenses is the body part touched for purposes of sexual gratification . . . The additional element in a sodomy offense is the specific sexual or intimate parts involved, namely, the mouth or anus." *Mash v. Commonwealth*, 376 S.W.3d 548, 559 (Ky. 2012).

Thus, based on the facts in Rochat's case, an instruction on sexual abuse is not appropriate if the jury could conclude beyond a reasonable doubt that the only sexual contact between Rochat and his victim was between his mouth and the victim's sex organs. If the jury could doubt that Rochat had

3

"deviant sexual intercourse" with the victim, but the jury could find beyond a reasonable doubt that he had "sexual contact" with the victim, then the sexual abuse instruction would be warranted. *Id.* at 560.

Here, the trial court instructed the jury on first-degree sodomy, but denied Rochat's request for an instruction on first-degree sexual abuse. Robinson, the only eyewitness to the crime, said that she saw Rochat with his head in between the victim's legs. She testified that she saw contact between Rochat's mouth and the victim's vagina. However, during cross-examination, Robinson also testified that a blanket was covering Rochat's head and the victim when she says she entered the room and saw Rochat with his head between the victim's legs. Physical evidence of DNA from Rochat's saliva on the victim's underwear corroborated the witness' testimony that there was contact between Rochat's mouth and the victim's intimate areas, but there was no evidence presented of Rochat's DNA being present on the victim's sex organs.

Thus, a jury could doubt whether Rochat's mouth had been touching the sex organs of his victim. While Rochat's DNA was found on his victim's underwear, a reasonable jury could believe his mouth touched the child's underwear without actually carrying out deviant sexual intercourse. Under a similar factual scenario, this Court previously recognized that:

> it is significant that the only witness to this incident testified that he had not observed actual oral-genital contact. Under these circumstances, the jury clearly could have entertained a reasonable doubt as to whether [Appellant] had touched the victim's sexual parts, but could have believed beyond reasonable doubt that he had touched "other intimate parts" of her body (e.g., her thighs), thus committing sexual abuse rather than sodomy.

4

*Johnson v. Commonwealth*, 864 S.W.2d 266, 277 (Ky. 1993).

Likewise, in the case at bar, there is evidentiary support for the lesser included offense of first-degree sexual abuse. Evidence was presented about which a jury could reasonably find that sexual contact had occurred but could harbor reasonable doubt about whether deviant sexual intercourse actually took place. Therefore, the trial court abused its discretion in failing to provide the lesser included instruction on first-degree sexual abuse. *Jenkins*, 496 S.W.2d at 449; *Allen*, 338 S.W.3d at 255 n.1.

Although a new trial is warranted, we will address those other issues raised by Rochat which are likely to reoccur at a new trial.

First, Rochat argues that the trial court erred by allowing the prosecution to introduce the written witness statement Robinson gave to police. A testifying witness' prior consistent statement is permissible non-hearsay under KRE 801A(a)(2) only if it is "offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive."

Here, the defense attacked Robinson's credibility during cross-examination, implying that she lied because she was motivated by jealousy and anger toward Rochat. To back up this claim, Rochat introduced text message evidence that Robinson suspected Rochat of cheating on her. Thus, the police report was introduced to corroborate Robinson's testimony and "had some rebutting force" that rehabilitated Robinson following cross-examination. *Noel v. Commonwealth*, 76 S.W.3d 923, 929 (Ky. 2002) (internal citation omitted);

5

*James v. Commonwealth*, 360 S.W.3d 189, 206 (Ky. 2012). The trial court properly permitted introduction of this evidence.

Next, Rochat argues that the prosecution's introduction of Rochat's jail "mug shot" photograph was improper. Under *Williams v. Commonwealth*, 810 S.W.2d 511, 513 (Ky. 1991), there is a three-prong test for admissibility of photographs of a defendant: "(1) the prosecution must have a demonstrable need to introduce the photographs; (2) the photos themselves, if shown to the jury, must not imply that the defendant had a criminal record; and (3) the manner of their introduction at trial must be such that it does not draw particular attention to the source or implications of the photographs."

Here, the Commonwealth first asked Robinson to identify the defendant in the courtroom, whom she identified as Benjamin Rochat. Then, the Commonwealth showed Robinson the photograph in question, asked her to identify its subject—Benjamin Rochat—and moved to introduce the photograph into evidence. Robinson had already identified Rochat prior to the Commonwealth's introduction of his photograph. But the Commonwealth argued that its police officer witnesses would only be able to identify Rochat as the man in the photograph, not the man in the courtroom. While Robinson recognized her former boyfriend despite his tidy courtroom appearance, the Commonwealth argued that Rochat's change in appearance—no longer having lengthy hair or an unkempt beard—meant that the testifying police officers would be unable to identify Rochat as the defendant, because they only knew how he looked during his arrest.

6

After introducing the photograph through Robinson, the Commonwealth later called the two Illinois State Police Troopers who responded to Rochat's arrest warrant and apprehended him in Illinois. The troopers were not asked to make a courtroom identification; apparently, because of his change of appearance since the arrest, they could not do so. But they were shown Rochat's mug shot, which they were able to identify as the man they arrested. Robinson had already identified Rochat as both the man in the photograph and the defendant in the courtroom. Thusly, the mug shot was properly used to connect the Appellant to the arresting officers. Therefore, the use of the mug shot for this purpose was proper.

However, the mug shot showed Rochat in a most unfavorable light. As such, further use by the Commonwealth of the photograph was prejudicial and improper. This included the projection of Rochat's mug shot onto the jury's viewing screen for the duration of the testimony of Robinson and the two Illinois State Police Troopers. That projection was also improperly used during the Commonwealth's closing argument. At retrial, this impermissible use of this evidence should not be repeated.

Next, Rochat argues that, because the victim did not testify at trial, showing her non-responsive interview at Children's Advocacy Center was irrelevant and prejudicial, or, alternatively, violated his right to confrontation. At trial, both sides agreed that the victim was incompetent to testify. She would not talk to Robinson or the police who responded, nor did she speak during the Children's Advocacy Center interview, which Officer Karen Spanyer

7

observed. The Commonwealth called Officer Spanyer as a witness to the interview and introduced the interview video as evidence of the victim's reserved, non-responsive demeanor during the interview. The video was not introduced for the weight of the victim's testimony, as she did not testify whatsoever.

Defense counsel did not preserve a Sixth Amendment confrontation issue under *Crawford v. Washington*, 541 U.S. 36 (2004). A defendant may waive his constitutional right to confrontation. *Montgomery v. Commonwealth*, 505 S.W.3d 274, 280-81 (Ky. 2016). So, we may reverse only if the alleged error is palpable. RCr 10.26. Here, Rochat argued that the victim's non-responsive demeanor in the video was testimonial, and therefore violated his right to confrontation under *Crawford*. However, the victim did not make any statements of guilt against Rochat. She was silent, offering no testimony whatsoever. Thus, there was no adverse testimony for him to confront. Rather than a confrontation issue, counsel's objections centered around the relevance of the victim's non-responsive demeanor and child abuse accommodation syndrome.

Here, we do not see the relevance of showing the victim's demeanor in the interview video. Officer Spanyer and Robinson's testimony, as well as the victim's incompetency to testify, established that the victim had a non-responsive demeanor. Further, even if relevant, introduction of the video was highly prejudicial to Rochat. Although the victim said nothing, a child's silence speaks volumes to a jury when sexual abuse of a child is alleged. Thus, there

8

being no adequate showing of relevancy, the trial court erred to permit introduction of the video evidence and should not permit such introduction in the new trial.

Next, Rochat argues the Commonwealth's closing statement that the presumptive positive test for saliva, i.e. the Phadebas Amylase Forensic test, showed a positive result for Rochat's saliva should have been excluded. Defense counsel argues that Phadebas tests can be positive for any DNA-carrying fluid—blood, breast milk, urine, saliva, semen, sweat, feces, etc.—not just saliva.

However, we find that the presumptive positive test for saliva is relevant. The term "presumptive positive test for saliva" was used by the Commonwealth's expert witness: Kentucky State Police Forensic Scientist Specialist II David McCann. He used this term to express that Phadebas testing provides a presumptive positive result for saliva, although other bodily fluids that contain the digestive enzyme alpha-amylase may also provide a positive result. A presumptive positive test for saliva shows the fluid may be saliva or it may not, whereas a confirmatory test would confirm that a fluid is saliva. As the expert aptly stated, presumptive positive for saliva "means it could be saliva, but I can't tell you 100% that it is saliva." The presumptive positive test for saliva on the victim's underwear led investigators to send the underwear off for DNA analysis, which revealed Rochat's DNA was present on the victim's underwear.

While the Phadebas test may be able to show the presence of DNA from multiple sources, the expert witness testified that Phadebas testing is called a "presumptive positive test for saliva" because the alpha-amylase concentration in saliva is higher than in other bodily fluids. Thus, the Phadebas test is much more likely to show the presence of saliva, due to the detectable levels of alpha-amylase in saliva as compared with other bodily fluids. VR 4/26/17 (8:58:14-8:58:22). Furthermore, the Phadebas test was a precursor to the DNA analysis, which led to discovery of Rochat's DNA on the victim's underwear. Thus, we cannot say that the trial court abused its discretion in overruling Rochat's objection to the Commonwealth's closing statement that the Phadebas test was presumptive positive for saliva. However, we encourage the Commonwealth to refrain from referring to the Phadebas test results as a positive result for saliva, as the Commonwealth's expert stated that a positive Phadebas test is a presumptive positive test for saliva—*not* a conclusive result for saliva.

For his final argument, Rochat claims that the prosecution's rebuttal witness, Lieutenant Tony Vonderhaar of the Boone County Sheriff's Office's Electronic Crimes Unit, was not qualified to testify as an expert because he relied on a report prepared by the Cellbrite data extraction software program rather than a self-constructed report. Lieutenant Vonderhaar was qualified under KRE 703(a) to testify about the data extracted from Rochat's phone, which was contained in the report. He stated that he had training in wireless networks, network intrusion, and Cellbrite data extraction software. While the

datasheet he read from was not prepared by him, it was prepared by the program he was operating for the purpose of displaying the data which he extracted from Rochat's phone. Thus, we find that the trial court properly permitted Lieutenant Vonderhaar's expert testimony concerning Rochat's text messages and the history of wireless networks to which his cell phone had connected.

## Conclusion

For the reasons stated herein, we hereby reverse the decision of the Kenton Circuit Court and remand this case for a new trial consistent with our holding herein.

All sitting. Minton, C.J.; Cunningham, Hughes, VanMeter, Venters, and Wright, JJ., concur. Keller, J., concurs in result only.


COUNSEL FOR APPELLANT:

Brandon Neil Jewell
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Jesse Robbins
Assistant Attorney General

11