# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

## Supreme Court of Kentucky

2017-SC-000442-MR

ROBERT A. TAYLOR            APPELLANT

ON APPEAL FROM JEFFERSON CIRCUIT COURT
V.      HONORABLE JUDITH E. MCDONALD-BURKMAN, JUDGE
NO. 15-CR-002649

COMMONWEALTH OF KENTUCKY            APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**AFFIRMING**

Appellant, Robert A. Taylor, Jr., was convicted by a Jefferson Circuit Court jury of three counts of first-degree trafficking in a controlled substance while in possession of a firearm, one count of second-degree trafficking in a controlled substance while in possession of a firearm, one count of third-degree trafficking in a controlled substance while in possession of a firearm, and possession of a firearm by a convicted felon. In accordance with the jury's recommendation, Taylor received a total sentence of fifty years' imprisonment.

Taylor now appeals to this Court as a matter of right, Ky. Const. §110(2)(b), alleging three claims of error: (1) the trial court erred in denying Taylor's motion to suppress the stop and search of his car, (2) the trial court erred in denying Taylor's motion to suppress certain statements he made to police, and (3) the Commonwealth failed to disclose exculpatory evidence. For the following reasons, we affirm.

# I. BACKGROUND

Detectives Stewart and Schraut of the Louisville Metro Police Department (LMPD) were conducting a surveillance on an area with a high level of crime and drug trafficking. The officers were stationed at Phyllis Court, a dead-end street in a residential area with a large apartment complex. Stewart testified that during this surveillance, he and Schraut observed Taylor and his vehicle in this area around midnight. Stewart testified that he observed Taylor exit his car and enter a blue Chevrolet Trailblazer. After a few seconds, Taylor exited the Chevrolet Trailblazer and got back into his vehicle. Stewart testified that, in his experience, he believed that Taylor's interaction with the Chevrolet Trailblazer was an apparent hand-to-hand drug transaction.

Following that occurrence, Stewart witnessed a male get into Taylor's vehicle. Taylor drove off, returning a short time later. Once Taylor returned, the male exited the vehicle and went into the apartment complex area. Stewart also stated he observed that Taylor's car was from Harlan County.

Stewart testified that upon witnessing these events, he and Schraut approached Taylor's vehicle, initiating a stop. Stewart pulled his vehicle directly behind Taylor's car, while Schraut pulled in front of Taylor's car. Upon approaching Taylor's vehicle, the officers could see a handgun in between the driver's seat and the center console directly adjacent to Taylor's right leg. Schraut said "gun" and the officers ordered Taylor out of the vehicle. Stewart testified that he asked Taylor if he was a convicted felon, to which Taylor responded in the affirmative. Stewart handcuffed Taylor and got the

passenger, Randee Phillips, out of the vehicle. Stewart arrested Taylor once the officers confirmed Taylor's status as a convicted felon.

Stewart then searched Taylor's vehicle while Taylor remained handcuffed outside. Stewart testified that Taylor did not consent to the search, but Taylor was a convicted felon and the officers had already found a gun in the car. The officers initially searched the front of the vehicle where the gun was located, which revealed a box in the vehicle containing a stolen 9mm semi-automatic handgun. The search revealed another box containing narcotics and drug paraphernalia. Stewart testified that these boxes were in the front passenger's-side floorboard of the vehicle. After recovering the narcotics, the officers performed a search of the rest of the car.

Taylor moved the trial court to suppress the evidence recovered in this search, arguing that it was the fruit of an unconstitutional stop and search. Specifically, he argued that the police officers had no reasonable, articulable suspicion that Taylor was involved in criminal activity, and, therefore had no right to search his vehicle and the two boxes located therein. The trial court held a hearing and denied Taylor's suppression motion in a written order.

LMPD Detective Spaulding arrived at the scene after the stop was initiated and searched Phillips, the passenger in Taylor's car. Spaulding found methamphetamine on Phillips's person during the search. Stewart testified that he asked Spaulding if Phillips had anything on her person. Stewart indicated that when he made this inquiry of his fellow officer, Taylor responded, stating that anything Phillips had belonged to him.

Taylor filed a motion to suppress his statement, arguing that he had not received his Miranda warnings at the time that he made the statement in response to Stewart's inquiry. Further, Taylor argued at trial that he was not presented with nor did he sign a waiver of rights form prior to making the statement. The trial court conducted a hearing and ultimately denied the motion.

After the trial court denied Taylor's various motions, the case was eventually tried and submitted to the jury. Following the jury's guilty verdict, Taylor moved the trial court for a judgment of acquittal or, in the alternative, a new trial. Taylor requested an evidentiary hearing concerning new evidence discovered post-trial. At this evidentiary hearing, Clay Kennedy, an attorney from the Louisville Metro Public Defender's office, testified. He stated that he was in the courthouse elevator with Detective Stewart and Taylor's trial counsel while the two discussed Taylor's trial, which had just ended. According to Kennedy, Stewart said there was a discussion the night of Taylor's arrest in which Stewart offered to make Taylor's case "go away" if Taylor was willing to "work" as a confidential informant. Kennedy stated that Stewart claimed Taylor responded that he did not want to go to jail that night. However, when Taylor discovered he would have to go to jail until the deal could be formalized, Taylor declined the offer.

The trial court denied Taylor's motion and proceeded with the sentencing phase. In accordance with the jury's recommendations, the trial court sentenced Taylor to: fifty years' imprisonment for first-degree trafficking in a

controlled substance (heroin), subsequent offense, while in possession of a firearm; fifty years' imprisonment for first-degree trafficking in a controlled substance (methamphetamine), subsequent offense, while in possession of a firearm; fifty years' imprisonment for first-degree trafficking in a controlled substance (oxycodone), subsequent offense, while in possession of a firearm; twenty years' imprisonment for second-degree trafficking in a controlled substance (buprenorphine-naloxone), subsequent offense, while in possession of a firearm; ten years' imprisonment for third-degree trafficking in a controlled substance (alprazolam), subsequent offense, while in possession of a firearm; and ten years' imprisonment for possession of a firearm by a convicted felon. The sentences were to be served concurrently for a total sentence of fifty years' imprisonment.

## II. ANALYSIS

### A. Motion to Suppress

When reviewing a motion to suppress evidence, our analysis is two-fold. *Williams v. Commonwealth,* 364 S.W.3d 65, 68 (Ky. 2011). First, "[w]e review the trial court's factual findings for clear error, and deem conclusive the trial court's factual findings if supported by substantial evidence." *Id.* at 68. We review the trial court's application of the law to the facts de novo. *Id.*

### 1. Stop

Taylor argues that the trial court erred in denying his motion to suppress the evidence revealed in the stop and search of his vehicle. We will first determine whether the stop was constitutional. Taylor contends that the stop

was unconstitutional because the detectives did not have a reasonable, articulable suspicion that he was engaged in criminal activity. We disagree.

The Fourth Amendment of the U.S. Constitution (applicable to the states through the Fourteenth Amendment) and Section 10 of the Kentucky Constitution provide safeguards against unreasonable searches and seizures. However, in spite of these safeguards, a police officer may constitutionally conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot. *Terry v. Ohio*, 392 U.S. 1, 30 (1968). A reasonable suspicion is more than an unparticularized suspicion or "hunch." *Id.* at 27.

Therefore, for the stop to be constitutional, at the time the detectives stopped Taylor, they had to have a reasonable suspicion, based on objective and articulable facts, that Taylor was engaged in criminal activity. *Id.* To determine whether an officer had such reasonable suspicion, this Court must look at the totality of circumstances surrounding the detention. *United States v. Cortez*, 449 U.S. 411 (1981). Taylor contends that the totality of the circumstances did not provide the officers with a reasonable, articulable suspicion that Taylor was committing a crime.

In the case at hand, Stewart testified that he and Schraut were conducting surveillance on a high-crime area located at Phyllis Court, which is a dead-end street utilized as the primary access to an apartment complex. Stewart stated that he observed Taylor exit his vehicle and enter a blue

6

Chevrolet Trailblazer where he remained for only seconds before exiting and reentering his own vehicle.

Further, he stated that an unidentified male later got into Taylor's vehicle which then drove off and returned shortly thereafter. When Taylor's vehicle returned, the unidentified male exited Taylor's vehicle and walked to a nearby apartment. Stewart stated that based on his experience, vehicles pulling up and meeting with multiple individuals for short stays, with said individuals then leaving, is indicative of drug trafficking.

In finding that the officers had a reasonable, articulable suspicion to justify the stop, the trial court's order conducted a thorough totality of the circumstances analysis:

> The stop occurred at midnight on a street flanked by apartment buildings in a court; [Taylor] pulled into the area in an out of county vehicle; [Taylor] exited his car, entered another car for a few seconds and then returned to his; another man entered [Taylor's] vehicle which left but returned. The other male left on foot. [The officers] assessment of the entire scenario supports the necessary reasonable articulable suspicion of criminal activity under *Terry v. Ohio*, 392 U.S. 1 (1968).

Based on the facts, the trial court did not abuse its discretion in finding that the officers had a reasonable and articulable suspicion that Taylor was engaged in criminal activity. Thus, the stop of his vehicle was constitutional.

"In previous cases, we concluded that an officer's testimony provides sufficient evidence to meet the substantial evidence standard." *Cobb v. Commonwealth*, 509 S.W.3d 705, 708 (Ky. 2017) *citing Williams*, 364 S.W.3d at 68; *Chavies v. Commonwealth*, 354 S.W.3d 103, 108 (Ky. 2011). Our review of

7

the record leads us to believe that the trial court did not abuse its discretion by denying the motion to suppress, as Stewart's testimony of the occurrences meets the substantial evidence standard. His testimony is of requisite substance and relevance to invoke a conviction of veracity in the minds of reasonable people. *Commonwealth v. Jennings*, 490 S.W.3d 339 (Ky. 2016).

Therefore, considering the totality of the circumstances, we hold that the stop of Taylor's vehicle was based upon a reasonable, articulable suspicion that criminal activity was afoot. *Terry*, 392 U.S. at 27; *see also Cortez*, 449 U.S. at 417–18. Having made such finding, we now turn to the search of Taylor's vehicle.

### 2. Search

Detective Stewart testified that upon approaching Taylor's vehicle, the officers observed a handgun stuck in between the driver's seat and center console that could be seen when a flashlight was shined through the un-tinted windshield.

This Court has long held that "any evidence which officers see in the course of an investigation or arrest which they detect without making a physical search is admissible under the 'plain view' doctrine." *Sanders v. Commonwealth*, 609 S.W.2d 690, 691 (Ky. 1980) (citations omitted). In the case at hand, the detectives saw the handgun in plain view while approaching Taylor's vehicle.

Taylor conceded that once the detectives saw a gun and discovered Taylor was a convicted felon, there was probable cause to arrest him. His

8

argument is that once the detectives collected the gun, the probable cause for their search was satisfied and the search was complete. Therefore, he contends that all evidence gathered once the weapon was seized was the fruit of an unlawful search.

"[A]n officer may perform a warrantless search of a detained vehicle should the officer have probable cause to believe the vehicle contains contraband or evidence of criminal activity." *United States v. Collazo*, 818 F.3d 247, 259 (6th Cir. 2016) (quoting *United States v. Lyons*, 687 F.3d 754, 770 (6th Cir.2012). "Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Collazo*, 818 F.3d at 259 (quoting *United States v. Haynes*, 301 F.3d 669, 678 (6th Cir.2002) (citation and internal quotation marks omitted)).

Under the circumstances, the officers had a reasonable, articulable suspicion to initiate an investigatory stop on the basis of drug trafficking. The officers had probable cause to arrest Taylor upon viewing the handgun and confirming his convicted felon status. And, the handgun provided the officers with probable cause to believe Taylor's vehicle contained contraband or evidence of criminal activity—as the evidence of Taylor's charge of possession of a firearm by a convicted felon remained in the vehicle in the sight of officers. *Collazo*, 818 F.3d at 259 (citing *Lyons*, 687 F.3d at 770).

We reiterate our analysis in *McCloud v. Commonwealth*:

> All warrantless searches are unreasonable unless the search falls within an exception to the warrant requirement. *Katz v. United States*, 389 U.S. 347 (1967). Among the recognized

exceptions to the warrant requirement is a search incident to arrest. *Rainey v. Commonwealth*, 197 S.W.3d 89, 92 (Ky. 2006). Under the search incident to arrest exception, an officer is permitted to search the person arrested and the area within the arrestee's immediate control. *Chimel v. California*, 395 U.S. 752, 762–63 (1969). In the context of automobiles, it has been held that once the driver is validly arrested, the police have the authorization to search the entire passenger compartment. *Thornton v. United States*, 541 U.S. 615, 623 (2004).

Although the Supreme Court recently limited the broad scope of this authority in *Arizona v. Gant*, 129 S.Ct. 1710, (2009), we do not believe *Gant* affects the case at hand. Under *Gant*, "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Gant*, 129 S.Ct. at 1723. Otherwise, "a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies." *Id.* at 1723–24. In the case at hand, however, it was reasonable for Royse to believe that McCloud's vehicle contained evidence of the offense of arrest (i.e., possession or trafficking in drugs). *Id.* at 1714. Therefore, if McCloud's arrest was valid, Royse's search of McCloud and the Grand Prix were both permissible.

A police officer in Kentucky is statutorily authorized to conduct a warrantless arrest if the officer either observes the arrestee commit a felony or misdemeanor in the officer's presence or when the officer has probable cause to believe the arrestee has committed a felony. KRS 431.005. *See also Maryland v. Pringle*, 540 U.S. 366, 370, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003). "[P]robable cause for arrest involves reasonable grounds for the belief that the suspect has committed, is committing, or is about to commit an offense." *Baltimore v. Commonwealth*, 119 S.W.3d 532, 538–39 (Ky. App. 2003).

286 S.W.3d 780, 784–85 (Ky. 2009).

Further, this Court held in *Robbins v. Commonwealth*:

The United States Supreme Court recently clarified the application of the search incident to arrest exception to vehicle searches in *Arizona v. Gant*. 129 S.Ct. 1710 (2009). Additionally, we reiterate that Section 10 of the Kentucky Constitution provides no greater protection than the federal Fourth Amendment. *LaFollette v. Commonwealth*, 915 S.W.2d 747, 748 (Ky.1996).

10

In *Gant*, the Court explained that a vehicle search is permissible following a lawful arrest in two circumstances. Law enforcement may search a vehicle incident to a recent occupant's arrest "when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Id.* at 1719. A search is also warranted when it is "reasonable to believe the vehicle contains evidence of the offense of arrest." *Id.* at 1723.

336 S.W.3d 60, 63 (Ky. 2011).

As in *Robbins*, the search in the case at hand was permissible under the second prong of *Gant*. Although the officers initially approached Taylor's vehicle for drug trafficking purposes, the officers had probable cause to arrest Taylor following the officer's observation of the handgun and confirming Taylor's status as a convicted felon.

Therefore, the trial court did not err in denying the motion to suppress the evidence of the search of Taylor's vehicle as the officers had probable cause to perform the warrantless search.

### 3. Taylor's Statements to Stewart

Taylor argues that two of his statements to police were made in violation of his constitutional rights under the Fifth Amendment. Specifically, he contends that his statement confirming he was a convicted felon and his statement claiming ownership of anything in the car or found on Phillips's person were a product of custodial interrogation, and, therefore a violation of his rights as he had not been given his *Miranda* warnings prior to making those statements.

11

Following the hearing and arguments on the motion, the trial court held that Taylor was not in custody when he made the statement he was a convicted felon. Furthermore, it held that while Taylor was in custody at the time of the statement made by Taylor pertaining to ownership of the evidence, the statement was unsolicited. The trial court reasoned that the purpose of the question posed by Stewart to Spaulding was part of the initial investigation and was not made to provoke a response from Taylor.

To decide if this evidence should be suppressed, we must first determine whether Taylor was subjected to custodial interrogation.

> In determining whether a defendant was subject to custodial interrogation we look to the totality of the circumstances "to determine 'how a reasonable man in the suspect's position would have understood the situation.'" *United States v. Salvo*, 133 F.3d 943 (6th Cir. 1998) (quoting *United States v. Phillip*, 948 F.2d 241, 247 (6th Cir.1991), cert. denied, 504 U.S. 930 (1992)). The "ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *United States v. Knox*, 839 F.2d 285, 291 (6th Cir.1988) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam) (internal quotation marks omitted)).

*United States v. Swanson*, 341 F.3d 524, 528–29 (6th Cir. 2003).

> *Swanson* further held:

> An officer may stop a person upon reasonable suspicion of criminal activity. The officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not obliged to respond. And, unless the encounter provides the officer with probable cause to arrest him, he must then be released. The very nature of a *Terry* stop means that a detainee is not free to leave during the investigation, yet is not entitled to *Miranda* rights.

*Id.* at 528 (citations and international quotation marks omitted).

12

The question of whether a defendant was "in custody" is a mixed question of fact and law, and is thus reviewed de novo. *Salvo*, 133 F.3d at 948 (citing *Thompson v. Keohane*, 516 U.S. 99, 100-03 (1995)).

Taylor argues that because his vehicle was blocked in by police cars, he was in custody from the moment the detectives arrived. However, *United States v. Spencer* held:

> The law enforcement officials' blockade of the car and display of force were also justified to protect their personal safety, as they had just stopped two people who were reasonably believed to be engaged in drug trafficking, and drug traffickers are known often to carry weapons and use force when confronted. *See United States v. Paulino*, 935 F.2d 739, 754 (6th Cir.)

91 F.3d 145 (6th Cir. 1996). As discussed above, the detectives had a reasonable, articulable suspicion to initiate the investigatory stop of Taylor. Detective Stewart testified that, in his experience, his observation of the short stops involving Taylor was indicative of drug trafficking. As *Spencer* held, law enforcement officials are permitted to block the cars to protect their personal safety. The detectives' actions of blocking Taylor's vehicle did not place Taylor in custody.

We are persuaded that, upon application of the above factors to the facts of this matter, under the totality of the circumstances, Taylor was not in custody for *Miranda* purposes when he made the statement that he was a convicted felon.

Taylor made the statement to Stewart simultaneous with exiting his vehicle. It cannot be said that a reasonable person in this situation would have

13

believed their freedom was restrained to the degree associated with a formal arrest. *Knox*, 839 F.2d at 291. There was nothing to indicate to Taylor that he was being arrested; he had not been detained in a patrol car, was not handcuffed, was not touched or physically searched, was not threatened with arrest when questioned, and the officers' weapons were never displayed. *Berkemer v. McCarty*, 468 U.S. 420 (1984); (other citations omitted).

The trial court did not err in denying Taylor's motion to suppress the statement that he was a convicted felon, as there was not a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest at the time of the statement. *Id.*

Taylor spontaneously made the second statement when Stewart asked Spaulding if Phillips had anything on her person. Stewart testified at the suppression hearing that Taylor stated that "anything [Phillips] has belongs to me. It's all mine." However, Stewart's question was not directed to Taylor—but to Spaulding, his fellow officer. The issue is whether Taylor was subject to custodial interrogation at the time he made his statement or whether he made the statement voluntarily.

At this point, Taylor was in custody, standing outside his vehicle in handcuffs. However, the question could not amount to a custodial interrogation, as it was not directed at Taylor. Rather, Stewart was simply asking Spaulding if Phillips had anything on her person. This question was not reasonably likely to elicit an incriminating response from Taylor. The trial court did not err in denying the motion to suppress this statement.

14

## B. Exculpatory Evidence

Taylor moved the trial court for an acquittal or, in the alternative, a new trial, based on alleged newly-discovered exculpatory evidence. The trial court held an evidentiary hearing on the motion at which Kennedy, an attorney at the Louisville Metro Public Defenders' office, testified. Kennedy's testimony revealed that he accompanied Stewart and Taylor's trial counsel in the courthouse elevator following Taylor's receipt of the guilty verdict. Kennedy testified that, while in the elevator, Stewart stated on the night Taylor was arrested he had offered to make Taylor's case "go away" if Taylor would become a confidential informant. Kennedy said that Stewart indicated Taylor eventually declined the offer prior to being transported to Louisville Metro Department of Corrections.

Taylor argues that the offer was exculpatory and could have been used: to impeach the Commonwealth's witnesses; to present the co-defendant, Phillips, as an alternate perpetrator; and in mitigation during sentencing. He contends that withholding this information during trial constituted a *Brady* violation.

"To establish that a *Brady* violation undermines a conviction, a convicted defendant must make each of three showings: (1) the evidence at issue is 'favorable to the accused, either because it is exculpatory, or because it is impeaching'; (2) the [Commonwealth] suppressed the evidence, 'either willfully or inadvertently'; and (3) 'prejudice . . . ensued.'" *Skinner v. Switzer*, 562 U.S.

15

521, 536 (2011) *citing Strickler v. Greene*, 527 U.S. 263, 281–282 (1999); *see also Banks v. Dretke*, 540 U.S. 668, 691 (2004).

Regarding *Brady* violations, this Court held in *Commonwealth v. Bussell*:

[T]he test set forth in *Brady* requires only that the court find the undisclosed evidence to be material to the defendant's guilt or punishment. *Brady*, 373 U.S. at 87. Thus, exculpatory evidence must only meet the requirement established for "materiality"—that is, there must be a "reasonable probability" that had the evidence been disclosed to the defendant, the outcome of the trial would have been different. *Kyles v. Whitley*, 514 U.S. 419 (1995); *see also Metcalf v. Commonwealth*, 158 S.W.3d 740, 746 (Ky. 2005).

226 S.W.3d 96, 102 (Ky. 2007).

Taylor argues that the Commonwealth asked the jury for a life sentence based on the need to protect the community from the danger Taylor posed. He insists that had he been able to present evidence that Stewart attempted to keep him from going to jail on the night of his arrest, it would have affected the Commonwealth's request. However, we cannot hold that the undisclosed evidence, Stewart's offer to Taylor to work as a confidential informant, is material to Taylor's guilt or punishment. We also note that this offer consisted of negotiations after the crime, not evidence of the crime itself. As Taylor had knowledge of the offer, the second element of *Brady* is not met. The Commonwealth could not have willfully or inadvertently suppressed the evidence Taylor had full knowledge of.

After a thorough review of the record, it cannot be said with reasonable probability that had the evidence been disclosed to Taylor, the outcome would

16

be different.  *Kyles v. Whitley*, 514 U.S. 419 (1995).  Therefore, the trial court did not err in denying the motion for a new trial.

### III.     CONCLUSION

For the foregoing reasons, we affirm the trial court.

Minton, C. J.; Hughes, Keller, Lambert, VanMeter and Wright, JJ., sitting.  All concur. Buckingham, J., not sitting.


COUNSEL FOR APPELLANT:

Christopher Barrett Thurman
Louisville Metro Public Defender

Daniel T. Goyette
Louisville Metro Public Defender


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Thomas Allen Van De Rostyne
Assistant Attorney General